IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| I.M. WILSON, INC., | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OTVETSTVENNOSTYOU "GRICHKO": | | |
| *et al.*, | : | NO. 18-5194 |
| *Defendants* | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                                       OCTOBER 18, 2019

INTRODUCTION

Plaintiff I.M. Wilson, Inc. filed this trademark infringement action against Defendants OOO Grichko, Nicolay Grishko, and Grishko S.R.O.,[1] the Russian and Czech entities that manufacture and sell ballet shoes under the name GRISHKO. I.M. Wilson owns four GRISHKO trademarks in the United States and the defendants own the trademark GRISHKO everywhere else in the world. The Court granted I.M. Wilson preliminary injunctive relief enjoining the defendants from selling GRISHKO-branded products in the United States. The defendants now seek an encore: for the Court to reconsider[2] its July 25, 2019 decision to grant I.M. Wilson a preliminary

---

[1] Although OOO Grichko is spelled with a "c", Mr. Grishko's last name and Grishko S.R.O. are spelled with an "s".

[2] The defendants move to "Alter, Amend or Seek Relief from the Court's July 25, 2019 Order" pursuant to Federal Rule of Civil Procedure 59(e). The Court of Appeals for the Third Circuit characterizes "a motion for reconsideration as the 'functional equivalent' of a Rule 59(e) motion to alter or amend a judgment." *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986) (quoting *Venen v. Sweet*, 758 F.2d 117, 122 (3d Cir. 1985)); *see Wiest v. Lynch*, 710 F.3d 121, 127 (3d Cir. 2013). For the sake of brevity, this memorandum refers to the defendants' filing as a motion for reconsideration.

1

injunction.[3] For the reasons that follow, the Court will vacate its decision to grant I.M. Wilson preliminary injunctive relief.

I. **Factual and Procedural Background**

After considering numerous rounds of briefing, several days of hearings, post-hearing submissions, and two prior motions to supplement the record, the Court's memorandum granting preliminary injunctive relief set forth extensive findings of fact and conclusions of law. In their motion for reconsideration, the defendants challenge only the Court's irreparable harm analysis. Accordingly, the relevant facts and procedural history concerning the Court's finding that I.M. Wilson would likely suffer irreparable harm are summarized below.

For decades, I.M. Wilson was the defendants' exclusive distributor in the United States. In 2016, the defendants terminated the exclusive licensing agreement under which the parties were operating, and the exclusivity of the relationship officially came to an end in March 2018. Around that time, the defendants began selling products directly to U.S. consumers through the website grishkoshop.com,[4] which increased their sales activities around the holidays. This prompted I.M.

---

[3] The defendants also move to supplement the preliminary injunction record with four letters and various purchase orders. One purpose of a motion for reconsideration is "to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Ziotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986)). The Court of Appeals for the Third Circuit has made clear that "new evidence" for reconsideration purposes "means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). The defendants offer no justification to permit the admissibility of two exhibits which predate the Court's decision. *See* Shishkova Decl. (Doc. No.76-1, Ex. B, E). Moreover, the defendants' additional exhibits are irrelevant to the Court's justification to grant the defendants' motion for reconsideration. The Court therefore denies the defendants' request to supplement the preliminary injunction record.

[4] Defendant Grishko Dance, S.R.O. obtains the products sold through the website from Defendant OOO Grichko. Defendant Nicolay Grishko is a 60 percent owner of OOO Grichko and serves as the company's President and General Director.

Wilson to move for a preliminary injunction on December 4, 2018 to prevent the defendants from infringing on the U.S. GRISHKO trademarks.

In its memorandum, the Court acknowledged that "monetary damages very likely would have sufficed" to remedy the irreparable harm alleged after the preliminary injunction record initially closed. Mem. at ¶ 90 (Doc. No. 66).[5] I.M. Wilson merely presented limited evidence that consumers believed it was operating grishkoshop.com and undercutting retailers' prices. *Id.* at ¶ 56. It also presented testimony that I.M. Wilson's store in New York received only a few phone calls from consumers with inquiries related to grishkoshop.com. *Id.* at ¶ 55. The Court found that this testimony presented, at best, some evidence that the defendants' entrance into the market may have resulted in a loss of control of reputation, loss of trade, or loss of goodwill for I.M. Wilson. *Id.* at ¶ 90. However, the Court was convinced that a preliminary injunction became necessary after Mr. Grishko sent two decision-altering communications to I.M. Wilson's retailers. *Id.*

On March 28, 2019, I.M. Wilson initially communicated to its retailers that it was "facing an interruption in service at the factory, which in turn leads to longer delivery times for out shipments." Grishko Decl. (Doc. No. 56-1, Ex. B).[6] In response, the defendants emailed I.M. Wilson's retailers a letter from Mr. Grishko on May 20, 2019. The letter stated that I.M. Wilson "has made unfounded threats of retaliation against retailers who purchase products through anyone other than [I.M. Wilson]." Pl.'s Mot. to Supp., Ex. A (Doc. No. 54-1). The letter further stated that I.M. Wilson had limited inventory and that Grishko Russia would no longer be providing I.M.

---

[5] As discussed below, "the availability of money damages for an injury typically will preclude a finding of irreparable harm." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 n.4 (3d Cir. 2017), *as amended* (June 26, 2017).

[6] I.M. Wilson's communicated supply problem was presumably caused by the defendants' decision to stop providing I.M. Wilson products in January 2019. The defendants were permitted to do so because the 1992 exclusive licensing agreement had ended.

3

Wilson with genuine GRISHKO products. *Id.* In closing, the letter stated, "we are confident that the Court ruling will be issued within the coming days and that it will be in our favor. Once the Court has denied [I.M. Wilson's] request, we look forward to supplying you with the full range of authentic Grishko brand products." *Id.*

Afterwards, the defendants emailed I.M. Wilson's retailers a letter from Mr. Grishko on June 17, 2019. In this letter, Mr. Grishko stated that the defendants were no longer supplying I.M. Wilson with their shoes, that I.M. Wilson was distributing shoes and attempting to pass off shoes as the defendants' own, and then provided retailers with a photographic guide of how to identify the defendants' products. Gili Decl. (Doc. No. 60-2, Ex. B). Mr. Grishko further stated, "We have also heard rumors that [I.M. Wilson] has threatened to sue retailers who don't purchase through [I.M. Wilson]." *Id.*

Focusing on the defendants' statements that I.M. Wilson will sue any retailer should they purchase GRISHKO products from any other supplier, the Court found it "difficult to see how it is possible for a communication such as this *not* to harm I.M. Wilson's reputation and goodwill." Mem. at ¶ 94 (Doc. No. 66) (emphasis in original). Based entirely on Mr. Grishko's communications, the Court found that I.M. Wilson had sufficiently demonstrated a likelihood of irreparable harm warranting preliminary injunctive relief. *Id.* at ¶ 94-95. The Court accordingly enjoined the defendants from selling GRISHKO-branded products in the United States.

**II.   Legal Standard**

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied,* 476 U.S. 1171 (1986) (internal citations omitted). A proper motion for reconsideration must rely on one of three grounds: "(1) an intervening change in controlling law;

(2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010); *see also Max's Seafood Café, by Lou–Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A finding of "clear error" requires a "definite and firm conviction that a mistake has been committed." *United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." *Continental Casualty Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citation omitted). Finally, a motion for reconsideration should not raise additional arguments that the movant "could have made but neglected to make prior to judgment." *Holsworth v. Berg*, No. 05-1116, 2005 WL 1799409, at *3 (E.D. Pa. Jul. 26, 2005) (quoting *Jasin*, 292 F. Supp. 2d at 677).[7]

### III. Discussion

A thorough description and analysis of the parties' initial arguments in this dispute regarding the grant of preliminary injunctive relief can be found in the Court's previous memorandum. For present purposes, then, the Court will focus on the arguments asserted by the parties concerning the motion for reconsideration. The defendants argue that the preliminary injunction should be altered, amended, or vacated because the Court incorrectly analyzed the irreparable harm prong of the preliminary injunction analysis.

---

[7] As discussed below, the defendants argue that a preliminary injunction must be causally related to the irreparable harm it is designed to alleviate. In its memorandum, the Court determined that I.M. Wilson's likely irreparable harm was caused solely by Mr. Grishko's communications to I.M. Wilson's retailers asserting I.M. Wilson's alleged litigious nature. The defendants' arguments predating the Court's decision concerned a wider array of potential irreparable harm. Accordingly, the defendants were not negligent to omit their current argument before the grant of preliminary injunctive relief.

The "extraordinary remedy" of preliminary injunctive relief "should be granted only in limited circumstances." *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). In ruling on a request for a preliminary injunction, a district court is required to examine the following four factors before granting preliminary injunctive relief: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm if relief is not granted; (3) the balance of equities; and (4) the public interest. *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014); *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 191-92 (3d Cir. 1990). The movant must "meet the threshold for the first two 'most critical' factors," and if "these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017).

"The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000). Courts "may award preliminary injunctive relief upon a clear showing of a likelihood of irreparable harm." *Groupe SEB USA*, 774 F.3d at 204 (internal quotation marks omitted). In coming to this conclusion, the Court is allowed to draw "fair inferences from facts in the record." *Id.* at 205. The "availability of money damages for an injury typically will preclude a finding of irreparable harm." *Reilly*, 858 F.3d at 179 n.4.

A "party seeking a preliminary injunction in a Lanham Act case is not entitled to a presumption of irreparable harm but rather is required to demonstrate that she is likely to suffer irreparable harm if an injunction is not granted." *Ferring Pharm., Inc.*, 765 F.3d at 217; *Groupe SEB USA*, 774 F.3d at 203. "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill," and "can also be based upon the possibility of confusion." *Pappan Enters., Inc. v. Hardee's Food Systems, Inc*, 143 F.3d 800, 805 (3d Cir. 1998) (citing *Opticians Ass'n*, 920 F.2d at 195-96).

Although the defendants presented numerous arguments in their briefing and during oral argument, only one merits discussion here. The defendants argue that the preliminary injunctive relief granted by the Court lacks a sufficient causal connection to the irreparable harm caused by Mr. Grishko's correspondence. I.M. Wilson argues that no in-circuit precedent requires a causal connection tying irreparable harm to the preliminary injunction. Sept. 12, 2019 Oral Arg. Tr. 27:2-8. In the alternative, I.M. Wilson argues that a causal nexus exists because communicating about I.M. Wilson's allegedly litigious nature to its own retailers is "inextricably intertwined" to the relief granted in the injunction. *Id.* at 27:12-21.

The Court first inquires into whether a causal connection must exist between the preliminary injunction and the likely irreparable harm corrected by said injunction. The Court of Appeals for the Third Circuit has made clear that "[t]he preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (emphasis in original) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). It follows that a preliminary injunction's exclusive ability to protect a plaintiff from irreparable harm inherently requires a causal connection between the injunction

7

and harm. Otherwise, a grant of preliminary injunctive relief risks proving entirely useless or overly broad.

The requirement to tailor preliminary injunctions exemplifies this innate prerequisite for a causal connection between the injunctive relief and the harm it is intended to remove. Although "District Courts are afforded considerable discretion in framing injunctions," *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 169 (3d Cir. 2011)), preliminary injunctions "should be 'no more burdensome to the defendant than necessary to provide complete relief to plaintiffs,'" *Novartis*, 290 F.3d at 598 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). In other words, courts must "closely tailor injunctions to the harm that they address." *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 972 (D.C. Cir. 1990). Accordingly, the preliminary injunction must protect a plaintiff from the cause of irreparable harm and nothing more.

The Court of Appeals for the Federal Circuit has further exemplified this concept by expressly requiring a plaintiff in a patent infringement case to demonstrate "a sufficiently strong causal nexus [that] relates the alleged harm to the alleged infringement" under an independent prong in the irreparable harm analysis. *Apple Inc. v. Samsung Elecs. Co. (Apple II)*, 695 F.3d 1370, 1374 (Fed. Cir. 2012). In explaining this separation of elements, the Court of Appeals for the Federal Circuit noted that "the 'irreparable harm and causal nexus inquiries' are 'inextricably related concepts,' but they 'may be separated for the ease of analysis.'" *Janssen Products, L.P. v. Lupin Ltd.*, 109 F. Supp. 3d 650, 696 (D.N.J. 2014) (quoting *Apple II*, 695 F.3d at 1374). It reasoned that "[t]o show irreparable harm, it is necessary to show that the infringement caused harm in the first place." *Apple Inc. v. Samsung Elecs. Co. (Apple I)*, 678 F.3d 1314, 1324 (Fed. Cir. 2012). In the patent infringement context, "the purpose of the causal nexus requirement is to show that the patentee is irreparably harmed *by the infringement*. Without such a showing, it is

reasonable to conclude that a patentee will suffer the same harm with or without an injunction, thus undermining the need for injunctive relief in the first place." *Apple Inc. v. Samsung Elecs. Co. (Apple III)*, 735 F.3d 1352, 1363 (Fed. Cir. 2013) (emphasis in original). This reasoning "reflects general tort principles of causation." *Id.* at 1361. The Court of Appeals for the Third Circuit has not yet articulated an independent causation prong of the irreparable harm analysis in trademark infringement cases.[8] However, the Court of Appeals for the Federal Circuit's "causal nexus" requirement further informs the Court of the importance of granting only preliminary injunctive relief that is causally related to the irreparable harm it seeks to rectify. Therefore, the Court agrees with the defendants that the likely irreparable harm and preliminary injunction granted must be causally related.

The Court next inquires into whether this necessary causation existed in this case. In initially granting I.M. Wilson a preliminary injunction, the Court found that I.M. Wilson was likely to suffer irreparable harm if an injunction was not granted. In doing so, the Court heavily relied upon Mr. Grishko's communications with I.M. Wilson's retailers, particularly Mr. Grishko's statements that I.M. Wilson would sue retailers who do not purchase through I.M. Wilson. The Court reasoned that Mr. Grishko's communications single-handedly harmed I.M. Wilson's reputation and goodwill and warranted preliminary injunctive relief. Mem. at ¶ 94 (Doc. No. 66). The injunction therefore should have been employed to rectify the harm caused exclusively by the communications. Instead, the Court broadly enjoined the defendants from selling GRISHKO-branded products in the United States. Pursuant to the preliminary injunction, Mr. Grishko could still in theory communicate I.M. Wilson's alleged litigious nature to U.S. retailers. This realization

---

[8] Again, the Court emphasizes that the Court of Appeals for the Federal Circuit separated the inquiries merely for "ease of analysis[.]" *Apple II*, 695 F.3d at 1374.

9

undercuts I.M. Wilson's assertion that the injunction and harm are "inextricably intertwined." Sept. 12, 2019 Oral Arg. Tr. 27:12-21. Enjoining the defendants from selling GRISHKO-branded products in the U.S. in no way rectifies the irreparable harm the Court found to be caused by Mr. Grishko's communications. The Court's overly-broad, insufficiently-tailored preliminary injunction therefore lacked a causal connection to I.M. Wilson's likely irreparable harm. Thus, the Court admits that in deciding to enjoin the defendants from selling GRISHKO-branded products in the United States, it was not as "on-pointe" as the ballerinas purchasing these products.

Given that the likely irreparable harm was caused by Mr. Grishko's communications to I.M. Wilson's retailers, perhaps an injunction limiting only Mr. Grishko's communications would have more likely been enforceable here. However, I.M. Wilson did not initially request any such injunctive relief and the Court refrains from granting such relief on its own.

Accordingly, upon further consideration, the Court agrees with the defendants that I.M. Wilson failed to satisfy its burden to justify granting I.M. Wilson preliminary injunctive relief and that the Court was mistaken in enjoining the defendants from selling GRISHKO-branded products in the United States.

## CONCLUSION

For the reasons stated above, the Court will vacate its preliminary injunction enjoining the defendants from selling GRISHKO-branded products in the United States as stated in the Court's July 25, 2019 Order (Doc. No. 67) and grant the defendants' motion for reconsideration. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE