**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| I.M. WILSON, INC, | |
| Plaintiff/Counterclaim Defendant, | |
| v. | CIVIL ACTION |
| OBCHTCHESTVO S OGRANITCHENNOY OTVETSTVENNOSTYOU "GRICHKO", *et al*., | NO. 18-5194 |
| Defendants/Counterclaim Plaintiffs | |
| v. | |
| I.M. WILSON, INC; IRENE WILSON; LEONARD P. GAGE; JUSTIN WILSON; and CHRISTINE WILSON, | |
| Counterclaim Defendants. | |

**Brief in Support of Motion to Dismiss Second Amended
Counterclaims by Individual Counterclaim Defendants Irene Wilson,
Leonard P. Gage, Justin Wilson, and Christine Wilson**

**CONRAD O'BRIEN PC**
John A. Guernsey (No. 25730)
Andrew K. Garden (No. 314708)
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Phone:  (215) 864-9600
Fax:  (215) 864-9620
Email: jguernsey@conradobrien.com
        agarden@conradobrien.com

*Attorneys for Counterclaim Defendants Irene
Wilson, Leonard P. Gage, Justin Wilson, and
Christine Wilson*

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

   A.  Procedural history. ................................................................................. 2

   B.  The second amended counterclaims' conclusory allegations about the Individual
Counterclaim Defendants. ................................................................................ 3

   C.  Defendants' other conclusory allegations. ........................................... 7

III.  LEGAL STANDARD......................................................................................... 8

IV.  ARGUMENT ..................................................................................................... 9

   A.  Declaratory relief (count one). ............................................................. 10

   B.  Trademark and trade dress claims (counts two, three, five, nine, and ten)....................... 10

   C.  Common law unfair competition and tortious interference (counts four and fifteen). ..... 11

   D.  Breach of Fiduciary Duty (count six). ................................................. 12

   E.  Breach of contract (count seven). ....................................................... 13

   F.  Defamation/Defamation per se (count twelve). ................................... 13

V.   CONCLUSION.................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accurso v. Infra-Red Servs., Inc.*,
  23 F. Supp. 3d 494 (E.D. Pa. 2014) ..................................................................13

*Aerotek, Inc. v. Beacon Hill Staffing Grp.*,
  2019 WL 1455337 (E.D. Pa. Apr. 2, 2019) .......................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................14

*Bret Binder v. Weststar Mortgage, Inc.*,
  2016 WL 3762710 (E.D. Pa. July 13, 2016) .......................................................9

*CDI Int'l, Inc. v. Marck*,
  2005 WL 327536 (E.D. Pa. Feb. 8, 2005) .........................................................14

*Checker Cab Philadelphia, Inc. v. Uber Techs., Inc.*,
  689 Fed. Appx. 707 (3d Cir. 2017) ...................................................................11

*Hisey v. QualTek USA, LLC*,
  2019 WL 3936555 (E.D. Pa. Aug. 20, 2019) ......................................................9

*I.M. Wilson, Inc. v. Grichko ("I.M. Wilson II")*,
  2019 WL 5394113 (E.D. Pa. Oct. 22, 2019) ....................................................1, 2

*I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko" ("I.M. Wilson I")*,
  397 F. Supp. 3d 721 (E.D. Pa. 2019) .....................................................1, 2, 12, 13

*Impact Applications, Inc. v. CNS Vital Signs*,
  2013 WL 5936422 (W.D. Pa. Nov. 5, 2013) .....................................................11

*Kane v. Chester Cty., Pennsylvania*,
  2019 WL 1897161 (E.D. Pa. Apr. 26, 2019) .....................................................15

*M.B. v. Schuylkill Cty.*,
  375 F. Supp. 3d 574 (E.D. Pa. 2019) ..................................................................8

*Madonna v. Francisco*,
  2014 WL 981568 (E.D. Pa. Mar. 13, 2014) .........................................................9

*PPG Indus., Inc. v. Generon IGS, Inc.,*
   760 F. Supp. 2d 520 (W.D. Pa. 2011) ...................................................................8

*Sovereign Bank v. BJ's Wholesale Club, Inc.,*
   427 F.Supp.2d 526 (M.D. Pa. 2006), *aff'd*, 533 F.3d 162 (3d Cir. 2008) ..............12

*Sproul Hill Associates, L.P. v. Newell Rubbermaid Inc.,*
   2013 WL 6731976 (E.D. Pa. Dec. 23, 2013) ........................................................10

*Stann v. Olander Prop. Mgmt. Co. Inc.,*
   2014 WL 3628588 (E.D. Pa. July 23, 2014) .........................................................12

**Statutes**

15 U.S.C. § 1052(a) ................................................................................................15

15 U.S.C. § 1052(c) ................................................................................................15

28 U.S.C. § 2201 ....................................................................................................10

**Other Authorities**

1 McCarthy on Trademarks and Unfair Competition § 8:1 (5th ed.) ............................10

Fed. R. Civ. P. 12(b)(6) .......................................................................................8, 9

## I.      INTRODUCTION

Four Individual Counterclaim Defendants (Irene Wilson, Leonard P. Gage, Justin Wilson, and Christine Wilson) have been improperly joined by defendants in what is fundamentally a trademark dispute between businesses. The Individual Counterclaim Defendants moved to dismiss defendants' first amended counterclaims based on the almost complete failure of that pleading to make any specific factual allegations about the Individual Counterclaim Defendants. The Individual Counterclaim Defendants now move to dismiss defendants *third* amended counterclaims for substantially the same reasons.[1]

Defendants filed their second amended counterclaims with the full benefit of "numerous rounds of briefing (with and without oral arguments), several days of hearings, [and] post-hearing submissions" on I.M. Wilson's motion for a preliminary injunction, which involved the same dispute raised by defendants' amended counterclaims. *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"* ("*I.M. Wilson I*"), 397 F. Supp. 3d 721, 728 (E.D. Pa. 2019), *vacated in part on reconsideration*, 2019 WL 5394113 (E.D. Pa. Oct. 22, 2019). Defendants also had the benefit of the Individual Counterclaim Defendants' motion to dismiss the amended counterclaims, which challenged the labels and conclusions that constituted the bulk of defendants' pleading. *See* Doc. No. 98. Strikingly, defendants' second amended counterclaims continue to make only conclusory statements about the Individual Counterclaim Defendants. The Court should apply its "judicial experience and common sense[,]" *Ashcroft v. Iqbal*, 556 U.S.

---

[1] Because I.M. Wilson, Inc.'s contemporaneously-filed motion to dismiss fully-addresses the legal insufficiency of defendants' second amended counterclaims, the Individual Counterclaim Defendants otherwise adopt and incorporate I.M. Wilson's motion and memorandum by reference.

662, 679 (2009), to find that defendants have again failed to plausibly allege any claims against the Individual Counterclaim Defendants.

## II.     BACKGROUND

### A.     Procedural history.

In light of the multiple days of hearings and voluminous briefing in this matter on I.M. Wilson's motion for a preliminary injunction, the Court is well-familiar with the general background of this trademark litigation, which involves a business dispute over whether defendants have any rights with respect to the "GRISHKO trademarks" in the United States *See I.M. Wilson, Inc.*, 397 F. Supp. 3d at 727. Defendants were preliminarily enjoined from "selling GRISHKO-branded products in the United States during the pendency of these proceedings[.]" *Id*. at 745. The Court subsequently reconsidered this injunction, exclusively because it found that "[e]njoining the defendants from selling GRISHKO-branded products in the U.S. in no way rectifies the irreparable harm the Court found to be caused by Mr. Grishko's communications." *I.M. Wilson, Inc. v. Grichko* ("*I.M. Wilson II*"), 2019 WL 5394113, at *5 (E.D. Pa. Oct. 22, 2019).

After being enjoined from selling GRISHKO products in the U.S., defendants filed a responsive pleading, and with the Court's permission, filed a 237 paragraph, thirteen count second amended counterclaim. Doc. No. 114, Second Amended Counterclaims ("SACC") at 14-57. The SACC includes the following counts:

- Count One – Declaratory Relief, against all counterclaim defendants (*id*. at 38-40);

- Count Two – Federal Unregistered Trademark Infringement, against all counterclaim defendants (*id*. at 40-41);

- Count Three – Common Law Trademark and Trade Dress Infringement, against all counterclaim defendants (*id*. at 41-42);

- Count Four – Common Law Unfair Competition, against all counterclaim defendants (*id*. at 42);

- Count Five – Trademark Dilution, against all counterclaim defendants (*id*. at 42-43);

- Count Six – Breach of Fiduciary Duty, against I.M. Wilson and Irene (*id*. at 43-44);

- Count Seven – Breach of Contract, against I.M. Wilson and Irene (*id*. at 45-46);

- Count Eight – Unjust Enrichment Under PA Law, against I.M. Wilson (*id*. at 46);

- Count Nine – False Advertising, against I.M. Wilson, Irene, and Justin (*id*. at 46-48);

- Count Ten – Unfair Competition / False Designation of Origin, against all counterclaim defendants (*id*. at 48-49);

- Count Eleven – Tortious Interference With Business Relations, against I.M. Wilson, Irene, and Leonard (*id*. at 49-51);

- Count Twelve – Defamation and/or Defamation Per Se, against I.M. Wilson, Irene, and Leonard (*id*. at 51-52); and

- Count Thirteen – Federal Trademark Infringement, against all counterclaim defendants (*id*. at 52-54).

**B.    The second amended counterclaims' conclusory allegations about the Individual Counterclaim Defendants.**

The Individual Counterclaim Defendants moved to dismiss the amended counterclaims principally on the basis that each of the individuals were mentioned only a handful of times in

3

hundreds of paragraphs. While the second amended counterclaims do *mention* the Individual

Counterclaim Defendants somewhat more frequently, in substance they do not add additional

factual allegations. Instead, most of what has been added constitute "conclusions [that are] not

entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

Indeed, in spite of the additional references, two of the four Individual Counterclaim

Defendants—Leonard and Justin—are still only specifically mentioned in *five* of the second

amended counterclaims' 237 paragraphs. *Id*. at ¶¶ 5, 11, 125, 208, 212 (Leonard); *id*. at ¶¶ 6, 12,

78-9, 94 (Justin).[2] For her part, Christine is mentioned in only *eight* paragraphs. *Id*. at ¶¶ 7, 13,

55, 58, 64-5, 94, 125. And Irene is mentioned in only 29 paragraphs. *Id*. at 10, 13, 36-9, 46, 49,

58, 64-5, 78-9, 94, 124-6, 129, 131, 167-9, 212-13, 218-22.

As to Leonard, the second amended counterclaims plead only two facts that this court has

any warrant to accept as true for the purposes of this motion: (1) his address (*id*. at ¶ 5) and (2)

that he is I.M. Wilson's "Chairman[.]" *Id*. at ¶ 11. All of the other (limited) allegations in second

amended counterclaims concerning Leonard are too conclusory to be accepted as true.

Specifically, the second amended counterclaims conclude the following:

- "[u]pon information and belief"[3] Leonard "is involved in all executive decision-
  making" and (2) "closely advises Ms. Wilson[4] on matters related to this lawsuit"
  (*id*. at ¶ 11);

---

[2] We use first names for the Individual Counterclaim Defendants to avoid confusion.

[3] Defendants nowhere disclose the "information" that informs their "belief[s.]"

[4] It is unclear to whom this refers. Defendants might mean Irene or Christine.

4

- that Leonard was "consulted" and "agreed that sending out correspondences to

  U.S. retailers would benefit" I.M. Wilson, which were allegedly "untruthful" (*id.*

  at ¶¶ 125, 208); and

- that "upon information and belief, [after] consulting with [Leonard, Irene],

  engaged in said interfering conduct with malice towards Grishko and the desire to

  injure them economically, and with wantonness and a true disregard for Grishko's

  rights." (*id.* at ¶ 212).

As to Justin, the second amended counterclaims also allege his address (*id.* at ¶ 6) and

that he "provides consulting services" for I.M. Wilson, "particularly with respect to marketing its

products." *Id.* at ¶ 12. Defendants then contend that Irene "consulted with Justin on matters

related to marketing the Grishko-branded products" and conclude that I.M. Wilson, Irene and

Justin "engaged in other improper conduct, including, without limitation, a false advertising

scheme." *Id.* at ¶ 78-9. Finally, defendants allege "upon information and belief" that Justin

"actively participate[s] in developing and managing the content of the site [grishko.com]." *Id.* at

¶ 94.

Defendants allegations concerning Christine are similarly thin. Aside from alleging her

address (*id.* at ¶ 7), defendants allege that Christine is I.M. Wilson's "Chief Financial Officer"

and state "upon information and belief" that Christine is "involved in all executive decision-

making while also closely helping Mrs. Wilson operate IMW's day-to-day affairs." *Id.* at ¶ 13.

Defendants also contend that Christine:

- "participated in the decision" to "file[] an application with the USPTO to register

  the GRISHKO trademark in [I.M. Wilson's] name" (*id.* at ¶ 55);

- "knew that [I.M. Wilson] did not have Mr. Grishko's consent to register the GRISHKO trademark" (*id*. at ¶ 58);

- "acted falsely, with knowledge of the falsity, or at least with recklessness as to whether" I.M. Wilson could continue to rely on documents that Mr. Grishko personally printed and signed, and that representations I.M. Wilson made to the USPTO were "material" (*id*. at ¶¶ 64-5);

- "actively participate[s] in developing and managing the content of the site [grishko.com]." (*id*. at ¶ 94); and

- was "consulted" by Irene and "agreed that sending out correspondences to U.S. retailers would benefit" I.M. Wilson. *Id*. at ¶ 125.

Finally, as to Irene, defendants make an implausible and conclusory allegation that almost 30 years ago, "Mr. Grishko and Mrs. Wilson agreed that Mrs. Wilson could apply to register Mr. Grishko's personal name as a trademark with the USPTO for the duration of the 1992 Agreement for the parties' mutual benefit[.]" *Id*. at ¶ 39. Apparently, the purpose of this allegation is to attempt to explain why Mr. Grishko "took the English text provided by Mrs. Wilson, placed it on letterhead, and provided it to [I.M. Wilson] as requested for the trademark filing." *Id*. Defendants offer a similar statement about another document Mr. Grishko "provided" in 1993, through which he purportedly "did not understand nor intend for ownership of the Grishko mark to pass to IMW[.]" *Id*. at ¶ 46.

Defendants then allege that Irene purportedly "knew" that I.M. Wilson "did not have Mr. Grishko's consent to register the GRISHKO trademark" in 2009. *Id*. at ¶ 58. On this basis, they conclude that Irene "acted falsely, with knowledge of the falsity, or at least with recklessness as to whether the August 5, 1992 and March 30, 1993 consent documents remained valid when they

attached the documents to the '869 Application" (made by I.M. Wilson in 2009) and that the "representation to the USPTO was material[.]" *Id*. at 64-65.

Defendants also contend that Irene "spearheaded" I.M. Wilson's "advertising efforts" (*id*. at ¶ 78) and engaged in "other improper conduct, including, without limitation, a false advertising scheme." *Id*. at ¶ 79.[5] According to defendants "[u]pon information and belief[,]" Irene "agreed that sending out correspondences to U.S. retailers would benefit" I.M. Wilson. *Id*. at ¶ 125-126. Defendants also contend that Irene mischaracterized this Court's preliminary injunction order (which was allegedly "attached" to the email sent to retailers). *Id*. at ¶ 131.

Finally, defendants plead a series of legal conclusions about Irene purportedly being in a "position[] of trust and confidence" with Grishko and "committing" purported "faithless and disloyal acts, including, upon information and belief, usurping corporate opportunities and goodwill[,]" thereby "breach[ing]" a purported "fiduciary dut[y] to Grishko[.]" *Id*. at ¶¶ 167-69. Defendants also make conclusory allegations that Irene "engaged in . . . interfering conduct with malice towards Grishko[.]" *Id*. at 212. This took the form of "attach[ing] the Court's July 25, 2019 order to correspondence sent to U.S. retailers and falsely stating that Grishko was enjoined from selling its ballet products in the U.S. when no injunction was in place." *Id*. at 213; *see also id*. at ¶ 218-222 (Irene's characterizations of this Court's order and defendants' conduct purportedly "defamatory" and made "with actual malice.").

### C.   Defendants' other conclusory allegations.

Defendants also plead the following conclusory statements, which are not supported by any factual allegations:

---

[5] Apparently attempting to buttress this allegation, defendants state that Irene "actively participate[s] in developing the content" for I.M. Wilson's website, grishko.com. SACC at ¶ 94.

8. Upon information and belief, [I.M. Wilson] is a closely held corporation that fails to follow corporate formalities and is owned and controlled by a small group of closely related individuals such that there is no real separation between the company and its owners.

9. The Wilson Defendants constitute [I.M. Wilson's] entire board of directors and manage the affairs of the company. . . .

14. Upon information and belief, the Wilson Defendants are also the principal owners and operators of [I.M. Wilson] and remain active participants in the infringement and additional conduct described herein, including all of the specific activities described below.

*Id*. at ¶¶ 8-10.[6]

Aside from these allegations, defendants continue to make scattershot allegations that "one or more Counterclaim Defendants" engaged in some alleged misconduct, without ever identifying which one. *Id*. at ¶¶ 212, 225.

## III.   LEGAL STANDARD

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint." *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011). Accordingly, "[t]o survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A counterclaim is facially plausible only when the facts it pleads "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *M.B. v. Schuylkill Cty.*, 375 F. Supp. 3d 574, 585 (E.D. Pa. 2019) (Pratter, J.) (quoting *Iqbal*, 556 U.S. at 678). The counterclaim "must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Bell Atl. Corp. v.*

---

[6] The second amended counterclaims refer to the Individual Counterclaim Defendants collectively as the "Wilson Defendants." Doc. No. 114 at 14.

*Twombly*, 550 U.S. 544, 555 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the [counterclaim] has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets omitted). A court applies "judicial experience and common sense" to determine whether a plausible claim has been stated. *Id*. at 679.

Furthermore, a "shotgun" counterclaim fails to cross the plausibility threshold when it "only state[s] generally that 'Defendants' engaged in [allegedly actionable] conduct (but do[es] not distinguish among the named defendants)." *Hisey v. QualTek USA, LLC*, 2019 WL 3936555, at *17 n.11 (E.D. Pa. Aug. 20, 2019) (Pratter, J.) (citing *M.B.*, 375 F. Supp. 3d at 586). Thus, "[a]n allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim." *Bret Binder v. Weststar Mortgage, Inc*., 2016 WL 3762710, at *3 (E.D. Pa. July 13, 2016) (Pratter, J.).

## IV.   ARGUMENT

As described above, the second amended counterclaims continue to provide conclusory statements about the Individual Counterclaim Defendants, without saying almost anything more about them or what they allegedly did. Where, as here, a pleading says so little about the individuals against whom it seeks relief, it is subject to dismissal under Rule 12(b)(6).

The defendants cannot bypass the requirement that they make sufficient factual allegations about each Individual Counterclaim Defendant by contending that each one is somehow responsible for the alleged conduct of I.M. Wilson: defendants' threadbare allegations seeking to pierce the corporate veil are equally insufficient. *See Madonna v. Francisco*, 2014 WL 981568, at *4–5 (E.D. Pa. Mar. 13, 2014) (Pratter, J.) (dismissing veil-piercing count where "[v]irtually all of the . . . allegations that relate to piercing the corporate veil are pleaded 'on

information and belief,' and are merely conclusory recitations of the factors that courts consider in determining whether a corporate veil should be pierced").

Dismissal is required for each of the counts lodged against each Individual Counterclaim Defendant, which are addressed briefly below:

### A.      Declaratory relief (count one).

"A declaratory judgment is appropriate when it will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *Sproul Hill Associates, L.P. v. Newell Rubbermaid Inc.*, 2013 WL 6731976, at *2 (E.D. Pa. Dec. 23, 2013) (Pratter, J.) (internal quotation marks and ellipsis omitted). Undoubtedly there is a "controversy" between *I.M. Wilson* and defendants concerning the trademark dispute alleged in the complaint. But the second amended counterclaims fail to allege any facts that so much as suggest a dispute between the defendants and the Individual Counterclaim Defendants. Furthermore, declaratory relief is discretionary in this Court. *See* 28 U.S.C. § 2201 ("any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)). The Court should decline to exercise its discretion to adjudicate the factually-unsupported declaratory judgment claim against the Individual Counterclaim Defendants.

### B.      Trademark and trade dress claims (counts two, three, five, nine, and ten).

Defendants attempt to raise a variety of trademark and trade dress claims against the Individual Counterclaim Defendants. For present purposes, is unnecessary to go into detail about the legal requirements to state a claim under each theory. *See* 1 McCarthy on Trademarks and Unfair Competition § 8:1 (5th ed.) ("[T]he history of American law throughout much of the 20th century is the gradual disappearance of distinctions between the law of 'trade dress' and that of

10

'trademarks.'" (citing Restatement (Third) of Unfair Competition § 16, cmt. a)).[7] Instead, it suffices to reiterate that defendants have completely failed to allege beyond conclusions any facts allowing the Court to infer that any of the Individual Counterclaim Defendants have taken any improper actions with respect to defendants' purported trademarks or trade dress. *See Impact Applications, Inc. v. CNS Vital Signs*, 2013 WL 5936422, at *7 (W.D. Pa. Nov. 5, 2013) ("Although a court must accept all factual allegations in a complaint as true and view them in a light most favorable to Plaintiff, it is free to disregard threadbare recitals of the elements of a cause of action supported by mere conclusory statements, which is what Plaintiff's trademark infringement claim consists mostly of.").[8]

### C.    Common law unfair competition and tortious interference (counts four and fifteen).

Identical reasoning applies to require dismissal of defendants' counterclaims for common law unfair competition and tortious interference. "*[A]ll* unfair competition claims recognized by Pennsylvania courts involve some accusation of 'passing off' of one's own product as another, or a false or dishonest statement, or tortious interference with contract, or intellectual property theft." *Checker Cab Philadelphia, Inc. v. Uber Techs., Inc.*, 689 Fed. Appx. 707, 709 (3d Cir. 2017) (emphasis in original). Defendants' second amended counterclaims are completely devoid of factual allegations about any Individual Counterclaim Defendant that would support such theories—including tortious interference, which requires the identification of a contractual

---

[7] It is unclear what state law would apply to defendants' common law counterclaims. The Individual Counterclaim Defendants reserve the right to argue that Pennsylvania law should apply. *See Checker Cab Philadelphia, Inc. v. Uber Techs., Inc.*, 689 Fed. Appx. 707, 710 (3d Cir. 2017) ("We disagree that the Supreme Court would embrace the Restatement (Third) of Unfair Competition as setting forth the Pennsylvania law.").

[8] Defendants' false advertising claim—count nine—is derivative of their purported right to "the Grishko Mark, the Grishko Model Marks and Grishko Trade Dress[.]" SACC at ¶ 192.

relationship with a third party. *See Aerotek, Inc. v. Beacon Hill Staffing Grp.*, 2019 WL 1455337, at *5 (E.D. Pa. Apr. 2, 2019) (Pratter, J.). Defendants allege that *I.M. Wilson*—not any of the Individual Counterclaim Defendants—"engaged in actions that jeopardized Grishko's relationship with one of the largest dance retailers in the U.S., Discount Dance Supply ('DDS')." SACC at ¶¶ 83-85. But defendants do not allege the nature of their purported relationship with DDS or the actual or potential existence of a contract. Nor do they allege the purported role of any of the Individual Counterclaim Defendants in the alleged interference with defendants' (unalleged) relationship with DDS.

### D.  Breach of Fiduciary Duty (count six).

In order to state a claim for breach of fiduciary duty under Pennsylvania law, a "plaintiff must allege: (1) a fiduciary relationship; (2) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (3) that the plaintiff suffered injury; and; (4) the defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries." *Stann v. Olander Prop. Mgmt. Co. Inc.*, 2014 WL 3628588, at *8 n.10 (E.D. Pa. July 23, 2014) (internal quotation marks and alterations omitted) (Pratter, J.). Furthermore, "[u]nder Pennsylvania law, a fiduciary relationship exists when one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other. " *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 427 F.Supp.2d 526, 534 (M.D. Pa. 2006) (internal quotation marks omitted), *aff'd*, 533 F.3d 162 (3d Cir. 2008).

Defendants' claim for breach of fiduciary duty against Irene fails at the first step, because the second amended counterclaims do not allege—and could not allege—a fiduciary relationship

with her. Defendants conclusory allegations notwithstanding, the reality is that *I.M. Wilson* engaged Grishko in a multi-decade arms-length business relationship.[9]

### E.     Breach of contract (count seven).

Count seven of the second amended counterclaims contends that both I.M. Wilson and Irene are liable for breaching an oral contract with defendants (which defendant is not specified) "whereby IMW was allowed to submit the '660 Application to the USPTO for the mutual benefit of IMW and Grishko for the duration of the 1992 Agreement." SACC at ¶ 172. In addition to being insufficiently pled, this claim fails as a matter of law against Irene because it does not contend that she was personally party to any contract, and "[i]t is fundamental contract law in Pennsylvania that one cannot be liable for a breach of contract unless one is a party to that contract." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 503 (E.D. Pa. 2014) (internal quotation marks omitted) (Pratter, J.).

### F.     Defamation/Defamation per se (count twelve).

Finally, defendants attempt to bring a claim against Irene and Leonard for defamation *per se*. Defendants allege that Irene "in consultation and with the approval of[10], issued various published statements on behalf of [I.M. Wilson] to third parties defaming Grishko and injuring its business reputation by communicating that Grishko was 'undercutting' and 'undermining' U.S. dance retailers, no longer supplying high-quality products, and defying order of this Court." SACC at ¶ 218.

---

[9] And indeed, Mr. Grishko has even testified that he had a clear understanding of the transaction into which he was entering. *I.M. Wilson I*, 397 F. Supp .3d at 731 ("Although the August 1992 and March 1993 letters were drafted in English, Mr. Grishko did not translate either into Russian prior to signing them because they were 'clear' and he could 'understand' them.").

[10] There appear to be several words missing in paragraph 218 of the second amended counterclaims.

Preliminarily, it is unclear how Leonard was allegedly involved in any "defamation" at all. His mere "approval" of purported statements does not make them his. And defendants' opaque allegation that "[a]s members of [I.M. Wilson's] board of directors, the Wilson Defendants directly or indirectly approved the plan" (*id*. at ¶ 105) is far too conclusory to be accepted as true. Even under pure notice pleading (i.e., before *Twombly* and *Iqbal*), defamation claims were deemed insufficient where they failed to allege that a moving defendant actually made a statement and instead proceeded under a "defamation by association" theory, as defendants do here. *See CDI Int'l, Inc. v. Marck*, 2005 WL 327536, at *3 (E.D. Pa. Feb. 8, 2005) (Schiller, J.) ("The Complaint is devoid of any claims that could be construed as an allegation that CFR or Richter said anything to any of CDI's customers. . . . Without an allegation that Defendants published a statement, the defamation count against both CFR and Richter fails to state a claim. I decline to adopt CDI's 'defamation by association' theory and therefore dismiss the defamation claim against both CFR and Richter." (quotations marks, citation, and footnote omitted)).

As to purported statements by Irene, defendants take pains not to provide complete quotations of the allegedly-defamatory statements. They refer to and provide fragmentary quotes from a "letter dated July 1, 2019" (SACC at ¶ 126) and an "email dated August 9, 2019" (*id*. at ¶ 130) but fail to attach a copy of either of these documents. Defendants' thus leave the Court in the dark about the full context of any allegedly defamatory statements. Possibly they are hoping to bluff their way into discovery. But this manner of pleading lacks the necessary "factual enhancement" to state a plausible claim. *Iqbal*, 556 U.S. at 678.

Furthermore, Irene's statements allegedly made in unspecified emails *attaching* and characterizing this Court's order (*e.g.*, SACC at ¶ 131) cannot  form the basis for a defamation

14

claim. Opinions made based on disclosed facts, as is the case here, are not actionable. *Kane v. Chester Cty., Pennsylvania*, 2019 WL 1897161, at *5 (E.D. Pa. Apr. 26, 2019) (Rice, M.J.) (collecting cases).

## V.    CONCLUSION

For all of the foregoing reasons, and those in I.M. Wilson's contemporaneously-filed motion and memorandum, the Individual Counterclaim Defendants respectfully ask the Court to dismiss the second amended counterclaims against them. Dismissal should be with prejudice: amendment would be futile because defendants have already participated in extensive proceedings in this case and submitted *four* versions of their counterclaims.[11] Defendants' failure

---

[11] Ordinarily a document titled "second amended" would be its third version. However, the pleading defendants filed as their second amended counterclaims actually differs from the version they sought leave to file, as illustrated by the highlighted comparison below between the proposed and filed versions of paragraph 135(d):

**Proposed 135(d)**: That IMW's Registrations are not incontestable nor conclusive evidence of IMW's ownership of the marks, but are subject to cancellation or transfer pursuant to 15 U.S.C. § 1052(c) because the name Grishko represents and identifies a particular living individual, namely Mr. Grishko, who revoked his consent to IMW's registration of his personal name as a trademark, and is therefore damaged by the existence of each of the IMW Registrations because each creates a false perception that Mr. Grishko is currently affiliated with, sponsored by, or endorsed by IMW when that is not the case;

**Filed 135(d)**: That IMW's Registrations are not incontestable nor conclusive evidence of IMW's ownership of the marks, but are subject to cancellation or transfer pursuant to 15 U.S.C. § 1052(a) and/or (c) because the name "Grishko" consists of or comprises matter which may disparage or falsely suggest a connection to a particular living individual, and by virtue thereof, represents and identifies a particular living individual, namely Mr. Grishko, who revoked his consent to IMW's registration of his personal name as a trademark, and is therefore damaged by the existence of each of the IMW Registrations because each creates a false perception that Mr. Grishko is currently affiliated with, sponsored by, or endorsed by IMW when that is not the case;

Doc No. 105 at Ex. A, ¶ 135(d); Doc. No. 114 at ¶ 135(d).

to plead sufficiently specific factual allegations about any of the Individual Counterclaim Defendants shows that they cannot do so.

<div style="margin-left: 40%">

Respectfully submitted,

</div>

Dated: November 27, 2019   **By:**   /s/ John A. Guernsey
John A. Guernsey (No. 25730)
Andrew K. Garden (No. 314708)
**CONRAD O'BRIEN PC**
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Phone:  (215) 864-9600
Fax:  (215) 864-9620
Email: jguernsey@conradobrien.com
        agarden@conradobrien.com

*Attorneys for Counterclaim Defendants Irene Wilson, Leonard P. Gage, Justin Wilson, and Christine Wilson*