IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| I.M. WILSON, INC.,<br><br>                    Plaintiff,<br>     v.<br><br>OBCHTCHESTVO  S  OGRANITCHENNOY<br>OTVETSTVENNOSTYOU "GRICHKO", et al.,<br><br>                    Defendants. | CIVIL ACTION NO. 2:18-cv-05194<br><br>JURY TRIAL DEMANDED |

## <u>PROPOSED ORDER</u>

**AND NOW**, this _____ day of _____, 2019, upon consideration of

Plaintiff. I.M. Wilson Inc.'s Motion to Dismiss or Strike Defendants' Second Amended

Counterclaim, and any response thereto, it is hereby **ORDERED** and that this Motion is

**GRANTED**, and it is further **ORDERED** that, Defendants counterclaims are dismissed with

prejudice.

BY THE COURT:

_____

Gene E.K. Pratter
United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| I.M. WILSON, INC., <br><br> Plaintiff, <br> v. <br><br> OBCHTCHESTVO S OGRANITCHENNOY OTVETSTVENNOSTYOU "GRICHKO", et al., <br><br> Defendants. | CIVIL ACTION NO. 2:18-cv-05194 <br><br> JURY TRIAL DEMANDED |

## PLAINTIFF I.M. WILSON, INC.'S MOTION TO DISMISS OR STRIKE DEFENDANTS' COUNTERCLAIMS

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), Plaintiff and Counterclaim-Defendant I.M. Wilson, Inc. ("I.M. Wilson") moves the Court to dismiss each of Defendants and Counterclaim-Plaintiffs' twelve substantive counts in their Second Amended Counterclaim for failure to state a claim upon which relief can be granted, and to strike Defendants remaining count for declaratory judgment.  In support, I.M. Wilson submits the accompanying memorandum of law.

Dated:  November 29, 2019        Respectfully submitted,

*/s/  Daniel E. Brewer*
Daniel E. Brewer
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
(215) 988-3370 office
(215) 988-2757 fax
Daniel.Brewer@dbr.com

Brian A. Coleman (admitted *pro hac vice*)
Katlyn M. Moseley (admitted *pro hac vice*)
DRINKER BIDDLE & REATH LLP
1500 K Street, NW, Ste. 1100
Washington, D.C. 20005-1209
Telephone:  (202) 842-8800
Fax:  (202)842-8465
Brian.Coleman@dbr.com
Katlyn.Moseley@dbr.com

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| I.M. WILSON, INC., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 2:18-cv-05194 |
| OBCHTCHESTVO S OGRANITCHENNOY OTVETSTVENNOSTYOU "GRICHKO", et al., | JURY TRIAL DEMANDED |
| Defendants. | |

## PLAINTIFF I.M. WILSON, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND STRIKE DEFENDANTS' COUNTERCLAIM

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND AND FACTUAL ALLEGATIONS .................................................. 3

III. LEGAL STANDARD .......................................................................................... 5

IV.  ARGUMENT ...................................................................................................... 6

    A.   Defendants' Federal and State Law Trademark Infringement Claims Must be Dismissed For Failure to Adequately Allege Ownership of the Alleged Model Marks .................................................................................................. 6

    B.   Defendants' Federal and State Law Trade Dress Infringement Claims Must be Dismissed for Failure to Articulate the Specific Elements of the Claimed Trade Dress, Plead Secondary Meaning, and Plead Non-Functionality ........................................................................................... 10

    C.   Defendants' Claim for Federal Trademark Infringement (Count Thirteen) Must be Dismissed for Failure to Establish Ownership of I.M. Wilson's Federally Registered Marks ................................................................... 15

    D.   Defendants' Pennsylvania Trademark Dilution Claim (Count 5) Must Be Dismissed for Failure to Adequately Plead Ownership and Actual Dilution ...... 17

    E.   Defendants' Breach of Fiduciary Duty Claim (Count 6) Must be Dismissed Because the Claim is Barred by the Statute of Limitations And, Alternatively, Defendants Fail to Allege a Fiduciary Relationship ..................... 19

    F.   Defendants Fail To State a Claim for Breach of Contract Claim (Count 7) ........ 22

    G.   Defendants Fail to State a Claim for Unjust Enrichment Claim (Count Eight) .................................................................................................... 24

    H.   Defendants Do Not Have Standing To Assert A False Advertising Claim (Count Nine) And Fail To State a Claim ............................................... 25

    I.   Defendants' Claim for Tortious Interference with Business Relations (Count Eleven) Fails to State a Claim upon Which Relief Can be Granted ........ 27

    J.   Defendants' Claim for Defamation (Count Twelve) Must be Dismissed ........... 30

    K.   Defendants' Claim for Declaratory Judgment Should be Stricken Because it is Redundant ..................................................................................... 33

V.   CONCLUSION .................................................................................................. 34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir. 2000) ................................................................................6

*AAMCO Transmissions, Inc. v. Romano*,
  42 F.Supp.3d 700 (E.D. Pa. 2014) .....................................................................9

*Abdellatif v. Alza Wrae Industrial Company*,
  No. 18-2297, 2019 WL 1284689 (E.D. Pa. Mar. 20, 2019) ...................................32

*Am. Greetings Corp. v. Dan–Dee Imports, Inc.*,
  807 F.2d 1136 (3d Cir.1986) ...............................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................5

*Associated Gen. Contractors of Calif., Inc. v. California State Council of
  Carpenters*,
  459 U.S. 519 (1983) ..............................................................................................5

*Bath Authority, LLC v. Anzzi LLC*,
  No 18-00834, 2018 WL 5112889 (E.D. Pa. Oct. 19, 2018) ................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................5

*Blanyar v. Genova Products Inc.*,
  861 F.3d 426 (3d Cir. 2017) ...............................................................................19

*Chase Bank USA, N.A. v. Hess*,
  No. 8-121-LPS-MPT, 2012 WL 1378534 (D. Del Apr. 17, 2012) ......................33

*Ciccarelli v. Carey Canadian Mines, Ltd.*,
  757 F.2d 548 (3d Cir. 1985) ...............................................................................19

*City of Harrisburg v. Bradford Trust Co.*,
  621 F. Supp. 463 (M.D. Pa. 1985) ................................................................20, 21

*Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*,
  214 F.3d 432 (3d Cir. 2000) .......................................................................7, 13, 15

*Dille Family Trust v. Nowlan Family Trust*,
  207 F. Supp. 3d 535 (E.D. Pa. 2016) .................................................................18

**Page**

*Dorley v. South Fayette Tp. Sch. Dist.*,
   129 F. Supp. 3d 220 (W.D. Pa. 2015).....................................................................23

*Douglas v. Osteen*,
   317 Fed. App'x 97 (3d Cir. 2009)....................................................................7, 13

*Egli v. Strimel*,
   251 F. Supp. 3d 827 (E.D. Pa. 2017) ................................................................34

*eToll, Inc., v. Elias/Savion Adver., Inc.*,
   811 A.2d 10 (Pa. Super. 2002)..........................................................................21

*Fair Wind Sailing, Inc. v. Dempster*,
   764 F.3d 303 (3d Cir. 2014).............................................................2, 10, 11, 12

*First Am. Mktg. Corp. v. Canelle*,
   No. 03-812, 2004 WL 250537 (E.D. Pa. Jan. 26, 2004)........................................6

*Glenn v. Point Park College*,
   272 A.2d 895 (Pa. 1971) ..................................................................................29

*Global Arena, LLC v. Eterpreting, LLC*,
   No. 16-3634, 2016 WL 7156396 (E.D. Pa. Dec. 8, 2016)...................................28

*Golkow v. Esquire Depositions, Services, LLC*,
   No. 07-3355, 2009 WL 3030218 (E.D. Pa. Sept. 23, 2009) ...............................22

*Goralski v. Pizzimenti*,
   115 Pa. Cmwlth. 210, 540 A.2d 595 (1988) ......................................................32

*Hanna v. SE Holdings, LLC*,
   No. 04–1294, 2005 U.S. Dist. LEXIS 24407 (W.D.Pa. Oct. 20, 2005) ................22

*Hansen v. Citibank, N.A.*,
   CIV. A. No. 94-5075, 1995 WL 273642 (E.D. Pa. May 5, 1995).......................6, 8

*Hershey Foods Corp. v. Ralph Chapek, Inc.*,
   828 F.2d 989 (3d Cir. 1987).............................................................................25

*Hunt v. University of Pittsburg Medical Ctr., Pinnacle*,
   No. 1:18-cv-01757, 2019 WL 3776545 (M.D. Pa. Aug. 12, 2019)...................31, 33

*Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*,
   40 A.3d 1261.................................................................................................28

**Page**

*Inwood Labs., Inc. v. Ives Labs., Inc.,*
  456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) ............................9

*John Evans Sons, Inc. v. Majik-Ironers, Inc.,*
  95 F.R.D. 186 (E.D. Pa. 1982) ....................................................33

*Karl v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
  78 F.Supp.2d 393 (E.D.Pa. 1999) ...............................................32

*Kimmel v. Phelan Hallinan & Schmieg, PC,*
  847 F. Supp. 2d 753 (E.D. Pa. 2012) .......................................5, 16

*The Knit With v. Knitting Fever, Inc.,*
  625 Fed. Appx. 27 (3d Cir. 2015) ...............................................27

*Kos Pharmaceuticals, Inc. v. Andrx Corp.,*
  369 F.3d 700 (3d Cir. 2004) .......................................................20

*Leder v. Shinfield,*
  609 F. Supp. 2d 386 (E.D. Pa. 2009) ..........................................20

*Lemar v. Am. Trading Co.,*
  643 Fed. Appx. 79 (3d Cir. 2016) ...............................................19

*Lexmark Int'l Inc. v. Static Control Components, Inc.,*
  134 S. Ct. 1377 (2014) ..............................................................25

*Lorillard Technologies, Inc. v. NJ Ale House, LLC,*
  No. 2:14-cv-2044, 2015 WL 1197531 (D.N.J. Mar. 13, 2015) ............13

*Louis Vuitton Malletier and Oakley, Inc. v. Veit,*
  211 F. Supp. 2d 567 (E.D. Pa. 2002) ..........................................6

*Mallory v. S&S Publishers,*
  260 F. Supp. 3d 453 (E.D. Pa.2017) ...........................................30

*McNeil Nutritionals, LLC v. Heartland Sweeteners LLC,*
  512 F. Supp. 2d 217 (E.D. Pa. 2007), *aff'd in part, rev'd on other grounds,*
  511 F.3d 350 (3d Cir. 2007) .......................................................17

*Medical Products Labs, Inc. v. Premier Dental Products Co.,*
  No. 12-6051, 2013 WL 395493 (E.D. Pa. Feb. 1, 2013) .....................20

*Mitchell v. Moore,*
  729 A.2d 1200 (Pa . Super. Ct. 1999) ..........................................25

**Page**

*Oshiver v. Levin, Fishbein, Sedran & Berman,*
    38 F.3d 1380 (3d Cir.1994)...............................................................9

*PPG Indus., Inc. v. Generon IGS, Inc.,*
    760 F. Supp. 2d 520 (W.D. Pa. 2011)...................................................5

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,*
    469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)...........................9

*Penrod Ricard USA, LLC v. Bacardi U.S.A., Inc.,*
    653 F.3d 241 (3d Cir. 2011).............................................................26

*Pension Benefit Guar. Corp. v. White Consol. Indus.,*
    998 F.2d 1192 (3d Cir. 1993).............................................5, 15, 16, 20

*Premier Dental Prod. Co. v. Darby Dental Supply Co.,*
    794 F.2d 850 (3d Cir. 1986).............................................................9

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust,*
    674 F. Supp. 2d 562 (D. Del. 2009)...................................................33

*Purcell v. Ewing,*
    560 F. Supp. 2d 337 (M.D. Pa. 2008)......................................31, 32, 33

*Quandry Solutions, Inc. v. Verifone, Inc.,*
    No. 07-097, 2009 WL 997041 (E.D. Pa. Apr. 13, 2009).......................23

*R.J. Ants, Inc. v. Marinelli Enterprises, LLC,*
    771 F. Supp. 2d 475 (3d Cir. 2011) .................................................15

*Reed v. Chambersburg Areas School Dist.,*
    951 F. Supp. 2d 706 (M.D. Pa. 2013).................................................18

*Reginella Cost. Co., Ltd., v. Travelers Cas. and Sur. Co. of America,*
    949 F. Supp. 2d 599 (W.D. Pa. 2013).................................................21

*Rose Art Indus., Inc. v. Swanson,*
    235 F.3d 165 (3d Cir. 2000).............................................................10

*RX Home Care Inc., v. Dubin,*
    2013 WL 11256832 (Pa. Super. Ct. July 29, 2013).............................28

*Schulman v. J.P. Morgan Inv. Mgmt., Inc.,*
    35 F.3d 799 (3d Cir. 1994).............................................................29

**Page**

*Shire U.S. Inc. v. Barr Labs., Inc.*,
   329 F.3d 348 (3d Cir. 2003) ................................................................11

*Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*,
   No. 06-CV-5165, 2009 WL 2526436 (E.D. Pa. Aug. 12, 2009) ...........................22

*Sweet Street Dress, Inc. v. Chudleigh's Ltd.*,
   69 F. Supp. 3d 530 (E.D. Pa. 2014) ........................................................12

*Syerg, Inc. v. Scott-Levin, Inc.*,
   51 F. Supp. 2d 570 (E.D. Pa. 1999) ....................................................30, 31

*Tekman v. Berkowitx*,
   639 Fed. Appx. 801 (3d Cir. 2016) .........................................................21

*Thompson v. Glenmede Trust Co.*,
   No. 92–5233, 1993 WL 349352 (E.D. Pa. Sept.8, 1993) .................................20

*Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*,
   212 F.3d 157 (3d Cir. 2000) ............................................................17, 18

*Trafix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001) ................................11, 12

*Tucker v. Merck & Co., Inc.*,
   102 Fed. Appx. 247 (3d Cir. 2004) ....................................................32, 33

*Wal-Mart Stores, Wal-Mart Stores, Inc. v. Samara Bros, Inc.*,
   529 U.S. 205, 120 S.Ct. 1339 ..........................................................11, 13

*Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*,
   982 A.2d 94 (Pa. Super. Ct. 2009) .........................................................29

*In re Wella A.G.*,
   787 F.2d 1549, 229 USPQ 274 (Fed. Cir. 1986) ............................................9

**STATUTES, RULES & REGULATIONS**

42 Pa. C.S.A. § 5525(4) ......................................................................24

42 Pa.C.S. § 8343(a) .........................................................................31

42 Pa. Cons. Stat. Ann. § 5524(7) ............................................................19

15 U.S.C. § 1115(b) .....................................................................9, 14, 24

**Page**

15 U.S.C. § 1125 ...............................................................................................6, 25, 27

Fed. R. Civ. P. 8(a)(2) ...................................................................................................5

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 5, 34

Fed. R. Civ. P. 12(f) .....................................................................................................34

Plaintiff/Counterclaim Defendant I.M. Wilson, Inc. ("I.M. Wilson"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Dismiss and Strike the Second Amended Counterclaim of Defendants Obchtchestvo S. Organitchennoy Otvetstevnnostyou "Grichko" ("OOO Grichko") and Nikolay Grishko (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f).

## I.    Introduction

Although this Court has already concluded that I.M. Wilson is the longstanding owner of the GRISHKO® trademark, conclusively evidenced by multiple federally incontestable registrations, Defendants nonetheless assert claims alleging infringement of that very same mark and of other purported trademarks appearing on the very products that I.M. Wilson has long and exclusively sold under that same GRISHKO® trademark.  As set forth in Defendants' Second Amended Counterclaim, these claims are asserted as thirteen separate federal and state law counts against I.M. Wilson and its alleged officers, directors and/or owners.  These claims arise out of (a) I.M. Wilson's alleged infringement of various unregistered model names and a purported trade dress that I.M. Wilson has long used in connection with its sale of goods under its federally registered and incontestable GRISHKO® trademark, (b) I.M. Wilson's alleged infringement of its own GRISHKO® mark, and (c) other tortious conduct during the course of the parties nearly three-decade long relationship.

Twelve of the thirteen federal and state law claims fail to state a claim upon which relief can be granted and should be dismissed. Defendants' remaining declaratory judgment count must be stricken as redundant because the counterclaim does not raise any issue not already raised by I.M. Wilson's Complaint, or which is not otherwise encompassed within the relief requested elsewhere in the Counterclaim.   Accordingly, the Second Amended Counterclaim should be dismissed in its entirety.

More particularly, Defendants' claims sounding in trademark infringement (Counts Two, Three, Four, Ten, and Thirteen) and trademark dilution (Count Five), fail adequately to allege, in view of I.M. Wilson's incontestable registrations, the most basic element of an infringement claim: ownership.  Defendants' allegations in the Second Amended Counterclaim are replete with bald assertions that Defendants' own trademark rights in various "Model Marks" as well as I.M. Wilson's federal trademark registrations.  Grishko's "Model Marks," however, are not registered and the Second Amended Counterclaim fails to adequately allege facts that establish ownership: first use in commerce, continuous use, and inherent distinctiveness as is required to establish ownership of Defendants' "Model Marks."  Moreover, even if pleaded, any claim of ownership is foreclosed by I.M. Wilson's ownership of incontestable federal registrations and associated goodwill for the brand under which these tertiary marks are allegedly used, GRISHKO®.  Nor can Defendants establish ownership of I.M. Wilson's federal trademark registrations; in fact, the Court has previously rejected the legal arguments on which Defendants' challenges are based.  As Defendants cannot establish this basic element of trademark infringement, all of their state and federal claims for trademark infringement must be dismissed.

Additionally, Defendants have not pleaded an actionable trade dress infringement claim. Defendants' alleged trade dress does not meet the Third Circuit's requirement that it be specifically defined per *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303 (3d Cir. 2014), and instead refers to its alleged trade dress in sweeping and conclusory fashion, using ambiguous and undefined terms and claiming protection of undefined "elements that U.S. consumers are familiar with representing Grishko."  Defendants have also failed to allege facts sufficient to support the plausible inference that the trade dress in question is non-functional or that it has acquired

secondary meaning, both of which are required elements for a trade dress claim, and Defendants cannot plead facts establishing ownership or secondary meaning in any event. Accordingly, these claims must be dismissed.

Defendants' false advertising claim and grab bag of state law claims fare no better. Defendants bring numerous claims against I.M. Wilson alleging breach of fiduciary duty, breach of oral contract, unjust enrichment, false advertising, tortious interference with business relations, and defamation/defamation per se. These claims suffer a myriad of deficiencies. For example, Defendants breach of oral contract, unjust enrichment, false advertising, and tortious interference claims are so devoid of specific factual allegations that Defendants cannot possibly meet the *Twombly/Iqbal* standard requiring allegations sufficient to "nudge" Defendants right to relief above a mere possibility. Defendants breach of fiduciary duty and defamation per se claims fail to plead even the basic requirements of those claims: a fiduciary duty and a defamatory statement.

All told, the Second Amended Counterclaim sets forth no actionable claim and should be dismissed, with the remaining declaratory judgment claim stricken as redundant. Defendants having already had two bites at amending, the dismissal should be with prejudice.

## II.    Background and Factual Allegations

I.M. Wilson filed its Complaint and Motion for Preliminary Injunction against Defendants in December 2018. After granting I.M. Wilson's Motion and denying Defendants' Motion to Dismiss, ECF No. 66, Defendants filed with their Answer and Counterclaim. Defendants subsequently amended that Counterclaim and, responding to I.M. Wilson's original Motion to Dismiss, filed the instant 42-page, 237 paragraph, thirteen count Second Amended Counterclaim, which realleges many of the same theories rejected by the Court in its rulings on the preliminary injunction motion. As the Court is well-versed in Defendants' theories in this regard, I.M. Wilson highlights only newly asserted facts relevant to Defendants' Counterclaim.

Defendants, identifying OOO Grichko and Nicolay Grishko in undifferentiated manner as "Grishko," allege that Grishko developed a broad line of Grishko brand ballet products, including various models of pointe shoes, and that Grishko owns trademark rights in nine unregistered model names (the "Model Marks"). Second Amended Counterclaim ¶¶ 22, 26. In support of their claim of ownership, Defendants allege that each of the model marks "has been in continuous use in the U.S. since at least as early as the corresponding first use date" as identified in the included table. Second Amended Counterclaim ¶ 26. The corresponding table identifies a first use date for each model mark ranging from 1990 to 2012. *Id*. In addition, Defendants allege that each Grishko pointe shoe has a "distinctive overall appearance" that constitutes protected trade dress (the "Grishko Trade Dress"). Second Amended Counterclaim ¶ 25. Defendants allege that retailers and U.S. customers have come to identify the Model Marks and Grishko Trade Dress as being sourced by Defendants. *Id*. ¶ 30.

In addition, Defendants' allege for the first time in this litigation that I.M. Wilson and Mr. Grishko reached an oral agreement on or about August 5, 1992 whereby I.M. Wilson agreed to register the GRISHKO trademark with the United States Patent and Trademark Office for the mutual benefit of both parties for the duration of the 1992 Agreement, and that this agreement required I.M. Wilson to transfer the rights to its federal trademark registration upon termination of the 1992 Agreement. Second Amended Counterclaim ¶ 172-75. Defendants' newfound assertion regarding an oral agreement is at odds with Defendants' prior allegation that the parties did not agree to such a transfer of ownership. Second Amended Counterclaim ¶ 52 ("Rather than transfer ownership of the 637 Registration, IMW and Grishko compromised and agreed that IMW would simply not renew the '637 Registration upon its expiration.").

### III.     Legal Standard

The Federal Rules of Civil Procedure require that complaints "show[] that the pleader is entitled to relief," and that courts dismiss complaints that "fail[] to state a claim upon which relief can be granted." FED. R. CIV. P. 8(a)(2), 12(b)(6).  A plaintiff's obligation to show entitlement to relief "requires more than labels and conclusion, and a formulaic recitation of the elements will not due." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[1]  Though a court must take as true all facts alleged, it may not "assume that the [plaintiff] can prove any facts that it has not alleged." *Associated Gen. Contractors of Calif., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Courts need not accept factual allegations disguised as mere legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, to survive a motion to dismiss, the claimant must show that they are entitled to relief by alleging actual facts that "nudge" their claims "across the line" from possible to plausible. *Twombly*, 550 U.S. at 555, 570.

When ruling on a motion to dismiss, a district court may consider factual allegations within other documents, including those described in the complaint and matters of public record, if the claims are based upon those documents.  *See Kimmel v. Phelan Hallinan & Schmieg, PC*, 847 F. Supp. 2d 753, 756 (E.D. Pa. 2012) (noting court may consider allegations in the complaint, exhibits attached to the complaint, matters and public records, and documents that form the basis of a claim at the motion to dismiss stage); *see also  Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (same).  Where documents attached to the complaint are

---

[1]"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint." *PPG Indus., Inc. v. Generon IGS, Inc*., 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011).

inconsistent with the allegations, the documents take precedence over the allegations. *See, e.g.*, *Hansen v. Citibank, N.A.*, CIV. A. No. 94-5075, 1995 WL 273642, at *2 n.2 (E.D. Pa. May 5, 1995) (finding terms of undisputedly authentic agreement took precedence over the terms alleged in the complaint).

## IV.    Argument

Each of Defendants' thirteen counts fail to state a claim or is otherwise redundant. These various defects are discussed below on a count-specific basis.  In any case, the Second Amended Counterclaim should be dismissed or otherwise stricken accordingly.

### A.    Defendants' Federal and State Law Trademark Infringement Claims Must be Dismissed For Failure to Adequately Allege Ownership of the Alleged Model Marks

In Counts Two (Federal Unregistered Trademark Infringement), Three (Common Law Trademark and Trade Dress Infringement), Four (Unfair Competition), and Ten (Unfair Competition/False Designation of Origin), Defendants allege various causes of action under federal and state trademark law based on I.M. Wilson's alleged infringement of Defendants' "Model Marks."  Each of these causes of action must be dismissed because Defendants have not, and cannot, plead ownership of the marks.

Alleging ownership of a mark is a foundational requirement to state a claim for trademark infringement, unfair competition claims brought pursuant to § 43(a) of the Lanham Act, unfair competition claims brought pursuant to state law, and common law infringement.  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc*., 237 F.3d 198, 210 (3d Cir. 2000), *see Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 582 (E.D. Pa. 2002) (noting common law cause of action for unfair competition in Pennsylvania mirrors cause of action for unfair competition under Lanham Act); *First Am. Mktg. Corp. v. Canelle*, No. 03-812, 2004 WL

6

250537, at *2 (E.D. Pa. Jan. 26, 2004) (listing elements of common law trademark infringement claim). A prima facie case of ownership can be established through registration of the mark, which is not present here. Defendants have not alleged that the Model Marks are registered, but only that "Grishko has applied to register the Model Marks." Second Amended Counterclaim ¶ 26.

Where the mark allegedly infringed is unregistered, as is here, the party can establish ownership by alleging that: (1) it was the first to adopt the mark in commerce; (2) it has used the mark continuously in commerce since its adoption; and (3) its mark is inherently distinctive or has acquired secondary meaning. *Douglas v. Osteen*, 317 Fed. App'x 97, 99 (3d Cir. 2009); *see also Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) ("With respect to ownership of an unregistered mark, the first party to adopt a mark can assert ownership as long as it continuously uses the mark in commerce.").

Here, Defendants have not plausibly alleged that they were the first to use the Model Marks in commerce or that Defendants have continuously used the marks in commerce since their adoption. With respect to each of the Model Marks, Defendants allege that "Grishko was the first to use, and has continuously used, each Model Mark in commerce through the U.S. since at least as early as the corresponding first use date show in the following table," which indicates first use dates for the marks ranging from 1990 to 2012. Second Amended Counterclaim ¶ 26. But no actual facts are pleaded from which a factfinder plausibly could infer such first use (or any use), and Defendants' conclusory allegation that Grishko was the first to use, and has continuously used, each Model Mark in commerce since these dates is inconsistent with the other allegations in the Second Amended Counterclaim and the plain language of the 1990 and 1992 Agreements.

Not a single sale to a single customer – other than I.M. Wilson – is identified anywhere in the Second Amended Counterclaim. Indeed, pursuant to the parties' March 1992 Agreement,

attached as Exhibit B to Defendants' Second Amended Counterclaim, I.M. Wilson was the exclusive source of all Grishko products in the United States through the duration of the agreement. *See* Second Amended Counterclaim at Exhibit B.  The counterclaim acknowledges as much, alleging that *I.M. Wilson* was the exclusive source of all Grishko products in the United States at least until March 1, 2017 when Defendants terminated the 1992 Agreement.  *See* Second Amended Counterclaim ¶¶ 86-87 (noting IMW as the exclusive distributor of Grishko-branded pointe shoes in the U.S. until March 1, 2017).

There is little secret to what Defendants are seeking to do, without saying so:  Defendants are seeking to claim I.M. Wilson's sales of I.M. Wilsons's GRISHKO® branded products, such products also bearing the "Model Marks," as *Defendants' sales*, since I.M. Wilson sourced those goods from Defendants.  Defendants are well aware that this cannot qualify as a "use" by Defendants, but Defendants, eager to avoid a motion to dismiss, simply omit to mention this fact, in the hope that the Court will abide its conclusory pleading of first and continuous use.  But even if the lack of sufficient facts did not doom these allegations, the obvious truth, shown by Defendants' other admissions as to I.M. Wilson's status as exclusive seller, forecloses its attempted end-run of the fact that I.M. Wilson was necessarily the first party to use each of the alleged Model Marks in commerce.  As the terms of the 1990 and 1992 Agreements take precedence over Defendants' inconsistent and conflicting allegations regarding first use in commerce, Defendants' allegations fail to adequately plead ownership of the Model Marks and their claims must be dismissed.  *See Hanseni*, 1995 WL 273642, at *2 n.2 (finding terms of undisputedly authentic agreement attached to complaint took precedence over the terms alleged in the complaint).

Even apart from the deficiencies in Defendants' factual allegations of first use in commerce, such an allegation of ownership cannot be squared with the undisputed fact that I.M. Wilson owns multiple incontestable federal registrations for GRISHKO®, *see* Second Amended Counterclaim ¶ 68; *see also* Complaint, Exhibit A,[2] which results in a *conclusive* presumption under 15 U.S.C. § 1115(b) that goods bearing such mark emanate from I.M. Wilson, and forecloses the contention that the same goods actually emanate from some other source.

Given I.M. Wilson's exclusive right to use coupled with the fact that Defendants admit that the "Model Marks" were used solely in connection with GRISHKO® products,  Defendants' theory would effectively split the ownership and associated goodwill of, for example, GRISHKO® NOVA PRO pointe shoes between two different parties, which is incompatible with the fundamental notion of a trademark is to establish goodwill in a single source.  *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) (the Lanham Act "provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers"); *see generally Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 n. 14, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).  Goodwill may be separated only in limited circumstances, such as geographically, *see Premier Dental Prod. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 854 (3d Cir. 1986), but no authority supports the proposed brand-subbrand split of trademark ownership that Defendants posit here.  *In re Wella A.G.*, 787 F.2d 1549, 1552, 229 USPQ 274, 276 (Fed. Cir. 1986) (discussing Section 2(d)'s requirement of a "single source").

---

[2]This Court may properly take judicial notice on a motion to dismiss of the federal trademark registrations that are attached as Exhibit A to I.M. Wilson's Complaint, as these documents are public records.  *See, e.g., AAMCO Transmissions, Inc. v. Romano*, 42 F.Supp.3d 700, 709-710 (E.D. Pa. 2014), quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir.1994) (on motion to dismiss, district court may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case").

Because I.M. Wilson owns the GRISHKO® mark, and therefore owns the goodwill in the GRISHKO® brand in the United States, it follows that any common law model names appurtenant to GRISHKO® branded products are likewise owned by I.M. Wilson. Indeed, at least one of I.M. Wilson's registrations specifically extends to the 2007 model. *See* Second Amended Counterclaim ¶ 68; Complaint, Exhibit A; *see also* ECF 66 at 19 ¶ 71. Defendants have not and cannot allege facts from which one may plausibly infer that they own the goodwill in model names used in connection with I.M. Wilson's incontestable ownership of the GRISHKO® trademarks.

Accordingly, Defendants have failed to adequately plead (and indeed, cannot plead) that they were the first to use, or otherwise own, the "Model Marks" in commerce, and consequently Counts Two, Three, Four, and Ten must be dismissed.

> **B.   Defendants' Federal and State Law Trade Dress Infringement Claims Must be Dismissed for Failure to Articulate the Specific Elements of the Claimed Trade Dress, Plead Secondary Meaning, and Plead Non-Functionality**

Counts Two (Federal Unregistered Trademark Infringement), Three (Common Law Trademark and Trade Dress Infringement), Four (Unfair Competition), and Ten (Unfair Competition/False Designation of Origin) allege various causes of action under federal and state trademark law based on Plaintiff I.M. Wilson's alleged infringement of Defendants' "Grishko Trade Dress." Because Defendants fail to plead facts sufficient to establish that the alleged trade dress is protectable, each of these claims must be dismissed.

The Lanham Act protects a party's "trade dress," which "has been defined as the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique," and is the "overall look of a product or business." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014) (quoting *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 171 (3d Cir. 2000)).

However, "trade dress protection extends only to incidental, arbitrary or ornamental product features which identify the product's source," *id*. at 309 (quoting *Shire U.S. Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 353 (3d Cir. 2003)), and the Supreme Court has cautioned against the overextension of trade dress. *See TrafFix*, 532 U.S. 23, 29, 121 S. Ct. 1255, 149 L. Ed. 2d 164 (2011); *see also Wal-Mart Stores*, *Wal-Mart Stores, Inc. v. Samara Bros, Inc.*, 529 U.S. 205, 213, 120 S.Ct. 1339, 146 L.E.2d 182 (2000) (cautioning against the overextension of trade dress because "product design almost invariably serves purposes other than source identification"). The party claiming trade dress protection must also articulate the specific elements of its trade dress. *Id*. Failure to articulate the specific elements of the claimed trade dress requires dismissal. *Id*. (affirming dismissal of trade dress infringement claim where claimant failed to give "adequate notice of what overall look it wishes to protect"). In addition, to establish unregistered trade dress infringement under the Lanham Act, a party must prove that (1) the allegedly infringing design is non-functional; (2) the design has acquired secondary meaning; and (3) the alleged infringer's use of the mark is likely to create confusion regarding the origin of the goods or services. *Fair Wind Sailing*, 764 F.3d at 309.

First, Defendants' trade dress infringement claims must be dismissed because they have not articulated the specific elements of the claimed trade dress. Defendants' counterclaim includes a single paragraph generically identifying the alleged "Grishko Trade Dress" as the "distinctive overall appearance" of each Grishko point shoe, including  "the configuration and combination or one or more of its GRISHKO trademarks, the Model Marks, the Model Marks' font style, color, and, shape, the Sole Mark, sole markings, size markings, width markings, stitch patterns *and other elements that U.S. consumers are familiar with* representing genuine Grishko products sourced from Grishko Ltd. in Russia." Second Amended Counterclaim ¶ 25. Defendants' generic

11

reference to the "color," "shape," "sole markings," "size markings," "width markings," "stitch patters" and "other elements" is not sufficient to give I.M. Wilson "adequate notice of what overall look" Defendants wish to protect, and this claim must be dismissed. *See Fair Wind Sailing*, 764 F.3d at 808.

Second, Defendants' trade dress infringement claims must be dismissed for failure to adequately plead that the claimed trade dress is non-functional. The Supreme Court has set forth a two-part test for determining functionality. First, a product feature is functional "if it is essential to the use of purpose of the article or if it affects the cost of quality of the article." *Sweet Street Dress, Inc. v. Chudleigh's Ltd.*, 69 F. Supp. 3d 530, 543 (E.D. Pa. 2014) (quoting *Trafix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001)). The key question with respect to functionality is "whether a particular feature of a product or service is substantially related to its value *as a product or service, i.e.,* if the feature is a part of the function served, or whether the primary value of a particular feature is identification of the provider." *Id.* (quoting *Am. Greetings Corp. v. Dan–Dee Imports, Inc.*, 807 F.2d 1136, 1142 (3d Cir.1986). If, as here, a product is functional under the first step, there is no need to proceed to the second. *Id.*

Defendants' Second Amended Counterclaim makes only the conclusory assertion that the alleged trade dress is non-functional. *See* Second Amended Counterclaim ¶¶ 25. Such a threadbare and unadorned claim must fail under the *Trafix* test, applied against the *Twombly/Iqbal* framework. The claimed trade dress, which allegedly consists of "size markings" and "width markings," is functional because such markings are a part of the function served by the product: they identify the size and width of the pointe shoe so consumers can select the appropriate size. With respect to the remaining elements of the claimed trade dress, Defendants fail to allege how the allegedly unique features are "incidental, arbitrary or ornamental features which identify the

12

product's source." *See Bath Authority, LLC v. Anzzi LLC*, No 18-00834, 2018 WL 5112889, at *6 (E.D. Pa. Oct. 19, 2018) (dismissing trade dress infringement claim for failing to plead claimed trade dress was non-functional).  Defendants cannot claim trade dress protection over functional features, and the claims must be dismissed

Lastly, Defendants have failed to adequately allege secondary meaning as required to establish that unregistered trade dress is protectable.  The Supreme Court has held that, in an action for infringement of unregistered trade dress, a product's design is protectable only upon a showing of secondary meaning.  *Wal-Mart Stores, Inc. v. Samara Bros, Inc.*, 529 U.S. 205, 210, 120 S.Ct. 1339, 146 L.E.2d 182 (2000).  "Secondary meaning exists when the mark is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services."  *Commerce Nat. Ins. Servs., Inc*, 214 F.3d at 428.  Factors considered in determining whether secondary meaning has been acquired include: "(1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion."  *Id*.  Though the claimant need not conclusively establish secondary meaning at the motion to dismiss stage, it must at least plead facts pertaining to the secondary meaning factors enumerated above.  *See Lorillard Technologies, Inc. v. NJ Ale House, LLC*, No. 2:14-cv-2044, 2015 WL 1197531, at *7 (D.N.J. Mar. 13, 2015) (denying motion to dismiss where plaintiff pled facts sufficient to show five of secondary meaning factors); *see also Douglas v. Osteen*, 317 Fed. Appx. 97, 99-100 (3d Cir. 2009) (affirming dismissal of trademark infringed claim where plaintiff did not establish secondary meaning of unregistered mark).

Here, Defendants have not pled a single fact that would tend to establish secondary meaning.  Apart from the conclusory allegation that "Grishko's retailers and U.S. ballet shoe customers have come to identify the products bearing the Model Marks, Sole Mark and Grishko Trade Dress as being sourced by, sponsored by, or affiliated with Grishko Ltd,"  Defendants allege only that, over the past three decades, "Grishko has manufactured, sold, and distributed over one million pairs of ballet shoes branded with the Model Marks, Sole Mark and/or Grishko Trade Dress" to consumers in the United States."  Second Amended Counterclaim ¶ 29-30.  However, the 1990 and 1992 Agreements, as well as Defendants' allegations regarding termination of those agreements, acknowledge that *I.M. Wilson* was the exclusive distributor of Grishko-branded products in the U.S. until at least March 2017.  Accordingly, *I.M. Wilson* is responsible for the sale and distribution of these products.  There are no allegations with respect to the amount *Defendants* have expended in sales or advertising, customer surveys, customer testimony, the use of the mark in trade journals, the number of sales, the number of customers, or any of the other factors enumerated by the Third Circuit.  As such, Defendants have failed to adequately allege secondary meaning.

Moreover, as explained previously, since the purported trade dress is allegedly used solely in connection with the GRISHKO® mark – which is owned by I.M. Wilson, and for which I.M. Wilson undisputedly owns multiple trademark registrations, conclusively establishing ownership, *see* ECF 66 (pp. 18-20), 15 U.S.C. § 1115(b) – it follows that any tertiary common law marks or trade dresses used in connection with GRISHKO® goods are owned by I.M. Wilson too.  *See* Part IV.A, *supra*.  Defendants have not and cannot plead any facts that give rise to a plausible inference to the contrary, i.e. that Defendants possess secondary meaning in the trade dress of a product sold

14

under a mark in which secondary meaning is owned, as a matter of law, by the owner of the incontestable registration for the trademark under which that product is sold, GRISHKO.®

Accordingly, having failed to plead secondary meaning, Counts Two, Three, Four, and Ten must be dismissed.

### C.   Defendants' Claim for Federal Trademark Infringement (Count Thirteen) Must be Dismissed for Failure to Establish Ownership of I.M. Wilson's Federally Registered Marks

Count Thirteen alleges I.M. Wilson committed federal trademark infringement by continuing to use I.M. Wilson's federally registered Grishko Trademarks after termination of the parties' 1992 Agreement. This claim must fail because Defendants' have not and cannot allege facts sufficient to support the plausible inference that Defendants own I.M. Wilson's federal registrations.

As discussed, a threshold requirement for a trademark infringement is ownership. *See Commerce Nat. Ins. Services*, 214 F.3d at 438; *R.J. Ants, Inc. v. Marinelli Enterprises, LLC*, 771 F. Supp. 2d 475, 501 n.6 (3d Cir. 2011). Defendants' Second Amended Counterclaim acknowledges that all seven U.S. registrations for the Grishko Trademarks are in I.M. Wilson's name. *See* Second Amended Counterclaim ¶¶ 68, 75-77. Moreover, four of these registrations have become incontestable and afford I.M. Wilson a presumption of ownership that can be overcome only on the narrow grounds articulated in the Lanham Act.[3] Accordingly, Defendants' allegations and the facts of which this Court may take judicial notice establish that I.M. Wilson is the owner of the allegedly infringed Grishko registrations. Indeed this Court has already ruled as

---

[3]Although Defendants omit this fact from their allegations, the Court may take judicial notice that I.M. Wilson's trademark registrations are incontestable because the registrations and affidavits of incontestability are accessible to the public on the U.S. Patent and Trademark Office's website. *See generally Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting court may consider records which the public "has unqualified access to" at the motion to dismiss stage).

to the legal effect of I.M. Wilson's incontestable federal registrations, foreclosing this argument. *See* ECF 66 at 18-20. This Court also rejected Defendants' theory of ownership in rejecting Defendants' effort to compel arbitration, concluding that "the current trademark dispute does not relate back to the 1992 ETLDA" and that I.M. Wilson's ownership of the GRISHKO trademarks was obtained "separately from the now terminated 1992 ETLDA . . . ." *Id.* at 36-37. As the 1992 ETLDA is before the Court on this motion to dismiss, as is the undisputely authentic August 5, 1992 Consent that forms of the basis of several counterclaims, *see* ECF 1-2, and I.M. Wilson's incontestable federal trademark registrations (public records), Defendants' claim for federal trademark infringement must be dismissed for failure to allege facts sufficient to support a plausible inference that Defendants own the allegedly infringed marks. *See Kimmel*, 847 F. Supp. 2d at 756 (noting court may consider allegations in the complaint, exhibits attached to the complaint, matters and public records, and documents that form the basis of a claim at the motion to dismiss stage).[4]

Notwithstanding I.M. Wilson's ownership, Defendants allege that they are the "beneficial owners" of I.M. Wilson's trademark registrations because "IMW had an obligation to transfer and/or assign the IMW Registrations to Grishko." *See* Second Amended Counterclaim ¶¶ 228-29. This is based on a conclusory assertion that I.M. Wilson agreed to register the GRISHKO trademark for the mutual benefit of both parties, and that this agreement obligated I.M. Wilson to transfer the registrations to Defendants at some undetermined point in the future upon termination of the 1992 Agreement. *See* Second Amended Counterclaim ¶¶ 172-77. But this allegation is

---

[4] Though Defendants' do not attach the August 5, 1992 document to their Second Amended Counterclaim, the document is undisputedly authentic and forms the basis of numerous claims in the Second Amended Counterclaims. *See* Second Amended Counterclaim ¶¶ 39-43, 170-185. As such, it is properly before the Court at the motion to dismiss stage. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (holding Court may consider undisputedly authentic document if claim is based on the document).

16

contradicted by Defendants' repeated assertions that I.M. Wilson fraudulently obtained its federal registrations without Defendants' consent by submitting the August 5, 1992 and March 30, 1993 agreements after Nikolay purportedly revoked his consent for registration. *See* Second Amended Counterclaim ¶¶ 52-69. Defendants' claim that Mr. Grishko revoked his consent to register the marks, yet I.M. Wilson was still obligated to transfer its trademark registrations upon termination of the agreement makes no sense. Second, even if Defendants' theory were viable, the subject claim is, at best, one that could exist only in the future, and as such is currently unripe, there is no dispute that I.M. Wilson is the current owner of incontestable registrations for GRISHKO®. Accordingly, Defendants' claim must be dismissed for failure to establish ownership of the Grishko trademarks.

### D. Defendants' Pennsylvania Trademark Dilution Claim (Count 5) Must Be Dismissed for Failure to Adequately Plead Ownership and Actual Dilution

As with Defendants' other claims for trademark infringement based on the Model Marks, Defendants' trademark dilution claim fails because they have not and cannot allege ownership of the marks. *See* Part IV.A, *supra*. Defendants' claim also fails to plausibly plead all three of the requisite elements of trademark dilution.

To establish a dilution claim under Pennsylvania law, the claimant must establish: (1) "the plaintiff is the owner of a mark that qualifies as a 'famous' mark;" (2) "the defendant is making commercial use in interstate commerce of a mark or trade name;" (3) the defendant's "use began after the plaintiff's mark became famous;" and (4) the defendant's "use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services." *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir. 2000).[5] The

---

[5]The requirements for pleading dilution under Pennsylvania's anti-dilution statute are the same requirements for pleading dilution under the Lanham Act prior to its amendment in 2006. *McNeil Nutritionals, LLC v. Heartland*

claimant must plead actual dilution, and allegations that a mark is likely to cause dilution are not sufficient. *Dille Family Trust v. Nowlan Family Trust*, 207 F. Supp. 3d 535, 549 (E.D. Pa. 2016).

Defendants failed to plausibly allege that the Model Names and Grishko Trade Dress are "famous marks" or that I.M. Wilson began using the marks after they became famous. Defendants' conclusory allegations that the marks are "famous" does not provide a sufficient factual basis to support a finding that the marks are indeed famous. *Reed v. Chambersburg Areas School Dist.*, 951 F. Supp. 2d 706, 727-28 (M.D. Pa. 2013). Moreover, Defendants' assertion that I.M. Wilson's "infringing use began after the Model Marks and Grishko Trade Dress became famous in Pennsylvania" is inconsistent with other allegations in the Second Amended Counterclaim and the documents attached thereto, which establish that I.M. Wilson was the exclusive source of Grishko products in the United States from 1990 – 2017. *See* Second Amended Counterclaim ¶ 87, Exs. A, B. Moreover, Defendants' acknowledge that many of the Model Marks were not introduced into U.S. commerce until well after I.M. Wilson began using the mark. *See id*. at ¶ 26. As Defendants fail to allege that the Grishko Model Marks and Grishko Trade Dress are famous, or that they became famous before I.M. Wilson began using the mark in 1990, Defendants' claim must be dismissed.

Additionally, Defendants' dilution claim must be dismissed for failure to allege that I.M. Wilson's use of the Grishko mark "causes dilution by lessening the capacity of [defendant's] mark to identify and distinguish goods or services." *See Times Mirror Magazines, Inc.*, 212 F.3d at 163. Defendants allege only that I.M. Wilson's use of the mark is "causing injury to Grishko's business reputation and/or a dilution of the distinctive value and goodwill associated with the Model Marks and Grishko Trade Dress." Second Amended Counterclaim ¶ 156. This allegation, which

*Sweeteners LLC*, 512 F. Supp. 2d 217, 238 (E.D. Pa. 2007), *aff'd in part, rev'd on other grounds*, 511 F.3d 350 (3d Cir. 2007). Accordingly, federal case law interpreting the Lanham Act pre-2006 is applicable to Defendants' claim.

essentially parrots statutory language without alleging any actual facts, fails to plausibly set forth facts sufficient to support the inference that I.M. Wilson's alleged use of the Model Marks and Grishko Trade Dress lessens the capacity of Defendants' mark to identify and distinguish goods and services, and the claim must be dismissed.

### E.   Defendants' Breach of Fiduciary Duty Claim (Count 6) Must be Dismissed Because the Claim is Barred by the Statute of Limitations And, Alternatively, Defendants Fail to Allege a Fiduciary Relationship

Count Six (Breach of Fiduciary Duty) is barred by the applicable statute of limitations because the alleged beach occurred almost thirty years ago.  Under Pennsylvania law, claims for breach of fiduciary duty are subject to a two-year statute of limitations. 42 Pa. Cons. Stat. Ann. § 5524(7); *Lemar v. Am. Trading Co.*, 643 Fed. Appx. 79, 82 (3d Cir. 2016).  The statute of limitations begins to run "when the [claimant] knows, or in the exercise of reasonable diligence should have known, (1) that he has been injured, and (2) that his injury has been caused by another's conduct." *Blanyar v. Genova Products Inc.*, 861 F.3d 426, 432 (3d Cir. 2017) (internal citations and quotation marks omitted).  "[A]pplication of the rule requires that the [claimant] use '*all reasonable diligence* to inform himself or herself properly of the facts and circumstances upon which the right to recovery is based and to institute suit within the prescribed statutory period.'" *Id.* (quoting *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985)).

Defendants base their breach of fiduciary duty claim on I.M. Wilson's conduct in connection with the August 5, 1992 and March 30, 1993 agreements.  Second Amended Counterclaim ¶¶ 163 – 167.  Specifically, Defendants appear to allege that I.M. Wilson misrepresented the effect Mr. Grishko's execution of the August 5, 1992 and March 30, 1993 would have on his intellectual property rights by falsely suggesting that the documents were consent documents required to protect Grishko's intellectual property rights in the United States

19

for the mutual benefit of both parties.  *See id.* ¶¶ 163 – 166.  As I.M. Wilson's registration of the GRISHKO® trademark constitutes constructive notice of its ownership claim, Defendants knew, or at least reasonably should have known, of this alleged breach at least a decade ago when I.M. Wilson obtained its trademark registrations.  *See Medical Products Labs, Inc. v. Premier Dental Products Co.*, No. 12-6051, 2013 WL 395493, at * 3 (E.D. Pa. Feb. 1, 2013) (noting that registration of a mark on the principal register is "constructive notice of the registrant's claim or of ownership thereof").  And indeed, Defendants were on actual notice of I.M. Wilson's alleged breach as of August 5, 2016 – the date Mr. Grishko filed a cancellation proceeding with the Trademark Trial and Appeal Board seeking to cancel I.M. Wilson's trademark registrations.[6]  As Defendants claims accrued (at the very latest), over three years ago, the claim is barred by the statute of limitations.

Alternatively, the claim still must be dismissed for failure to plausibly allege the existence of a fiduciary relationship between I.M. Wilson and Defendants.  Under Pennsylvania law, "[a] fiduciary relationship exists where there is a 'relationship involving trust and confidence, and the proof must show confidence reposed by one side and domination and influence exercised by the other.'"  *Leder v. Shinfield*, 609 F. Supp. 2d 386, 401 (E.D. Pa. 2009) (quoting *Thompson v. Glenmede Trust Co.*, No. 92–5233, 1993 WL 349352, at *4 (E.D. Pa. Sept.8, 1993)).  "However, it is not enough to show that the plaintiff imposed his or her trust in the defendant; the latter must also have accepted the fiduciary relationship."  *City of Harrisburg v. Bradford Trust Co.*, 621 F. Supp. 463, 473 (M.D. Pa. 1985).  "[M]erely reposing confidence in another may not, of itself,

---

[6] The Court may take judicial notice of TTAB proceedings because the proceedings are accessible to the public on the U.S. Patent and Trademark Office's website.  *See* n.3, *supra; see generally Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 705 n.5 (3d Cir. 2004) (taking judicial notice of a public record that was posted on the United States Patent and Trademark Office's website regarding the date that a notice of allowance was issued); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting court may consider records which the public "has unqualified access to" at the motion to dismiss stage).

create the (fiduciary) relationship . . . there must be such circumstances as indicate a just foundation for a belief that in giving advice . . . one is acting not in his own behalf, but in the interests of the other party." *Id.* "In determining whether a fiduciary relationship exists, 'the critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by overmastering influence on one side or weakness, dependence, or trust, justifiably reposed on the other side.'" *Id.* (quoting *eToll, Inc., v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 23 (Pa. Super. 2002)). "An 'overmastering influence' exists when the position of the parties is 'so extremely one-sided' that one party completely controls the relationship, or when one party acts as advisor or counsel to another who is in 'a position of pronounced economic and intellectual weakness.'" *Reginella Cost. Co., Ltd., v. Travelers Cas. and Sur. Co. of America*, 949 F. Supp. 2d 599, 612 (W.D. Pa. 2013). "There is a crucial distinction between surrendering control of one's affairs to a fiduciary or confidant or party in a position to exercise undue influence and entering into an arm's length commercial agreement, however important its performance may be to the success of one's business." *Tekman v. Berkowitx*, 639 Fed. Appx. 801, 806 (3d Cir. 2016) (quoting *eToll*, 811 A.2d at 23).

Here, Defendants allege that Grishko and I.M. Wilson "formed a fiduciary relationship at a time when Mr. Grishko and Grishko Ltd.'s predecessor (and/or its principals) were (i) incapable of owning private property; (ii) unable to fathom the concept of being represented by counsel; (iii) deficient in communicating using the English language; and (iv) strangers to U.S. intellectual property law." Second Amended Counterclaim ¶ 160. As a threshold matter, these allegations are wholly inconsistent with Defendants' allegations that Mr. Grishko, prior to establishing his relationship with I.M. Wilson, formed and operated a successful company selling products internationally and obtaining worldwide fame in the industry. *See* Second Amended Counterclaim

¶ 18.  Moreover, the allegations fall well short of adequately alleging that I.M. Wilson "completely control[ed]" the parties relationship or that it acted as an "advisor or counsel" to Mr. Grishko who was "in a position of pronounced economic and intellectual weakness."  Moreover, Defendants fail to allege that I.M. Wilson accepted a fiduciary relationship and agreed to act on the behalf of Defendants, as opposed to on its own behalf.   Indeed, Defendants acknowledge that I.M. Wilson represented that the August 5, 1992 assignment would "benefit Grishko *as much as it would benefit IMW*" thereby establishing that I.M. Wilson was not acting in a fiduciary capacity on behalf of the Defendants.  Second Amended Counterclaim ¶ 166.  As such, Defendants' allegations suggest nothing more than the existence of an arm's length commercial transaction and Defendants' belief that I.M. Wilson did not live up to its expectations under its commercial agreement.  *See Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, No. 06-CV-5165, 2009 WL 2526436 (E.D. Pa. Aug. 12, 2009) (dismissing breach of fiduciary duty claim brought by licensee against licensor).  Defendants fail to allege that I.M. Wilson owed Defendants a fiduciary duty, and Defendants claim must be dismissed.

### F.   Defendants Fail To State a Claim for Breach of Contract Claim (Count 7)

Count Seven (Breach of Contract) must be dismissed because Defendants fail to plead facts sufficient to show the existence of an oral contract between I.M. Wilson and Defendants.

"Under Pennsylvania law, a breach of an oral contract claim requires the plaintiff to prove the existence and terms of the oral contract, defendant's breach of the contract, and resulting damages." *Golkow v. Esquire Depositions, Services, LLC*, No. 07-3355, 2009 WL 3030218, at *2 (E.D. Pa. Sept. 23, 2009) (quoting *Hanna v. SE Holdings, LLC*, No. 04–1294, 2005 U.S. Dist. LEXIS 24407, at *31 (W.D.Pa. Oct. 20, 2005)).  Where the claimant alleges the existence of an oral contract that modified a written agreement, a heightened standard of proof applies and the claimant must allege facts sufficient to establish the existence of an oral contract with "clear, direct,

22

and precise" evidence.  *See Quandry Solutions, Inc. v. Verifone, Inc.*, No. 07-097, 2009 WL 997041, at *6 (E.D. Pa. Apr. 13, 2009) (holding heightened standard applies where oral contract allegedly modified written agreement).

Here, Defendants state that Nikolay Grishko signed documents on August 5, 1992 and March 30, 1993 that vested I.M. Wilson with the authority to register the Grishko trademark. Second Amended Counterclaim ¶¶ 39-51.  These documents do not contain any language suggesting I.M. Wilson's rights in the Grishko trademark expire upon termination of the parties' 1992 Agreement.  *See* ECF Nos. 1-2, 1-3.[7]  Notwithstanding the plain language of these agreements, Defendants allege that "on or about August 5, 1992" an oral agreement was reached between Mr. Grishko and IMW whereby IMW was allowed to submit an application to register the GRISHKO trademark for the mutual benefit of IMW and Grishko "for the duration of the 1992 agreement."  Second Amended Counterclaim ¶ 172.  Although Defendants' description of the alleged oral contract is silent as to what would occur upon termination of the 1992 Agreement, Defendants contend that IMW was obligated to transfer and/or assign the Grishko marks back to Grishko. *Id.* at ¶ 175.  Defendants do not allege that IMW agreed to such an arrangement.  Indeed, Defendants earlier allege that IMW and Grishko did not reach an agreement to transfer I.M. Wilson's trademark registration, and that I.M. Wilson obtained its current trademark registrations without the Defendants' knowledge or consent.  *Id.* at ¶¶ 52-59.  Though pleading inconsistent claims is permissible as a general matter, the ability to plead in the alternative is not limitless, and where one factual assertion negates an essential element of a contrary assertion, that conflict cannot stand.  *Dorley v. South Fayette Tp. Sch. Dist.*, 129 F. Supp. 3d 220, 236 (W.D. Pa. 2015). Accordingly, Defendants' inconsistent allegations with respect to the alleged formation of an oral

---

[7]The Court may properly consider these documents in ruling on I.M. Wilson's motion to dismiss because they are referenced in and integral to Defendants' counterclaims, and are part of the record in this case. *See* n.4, *supra*.

contract fall woefully short of the "clear, direct, and precise" facts required to establish the existence of an oral contract and this claim must be dismissed.

Moreover, even if Defendants had adequately alleged the elements of an oral contract, it cannot stand given that the remedy requested – transfer of the GRISHKO ® registrations – is foreclosed by the incontestability provisions of 15 U.S.C. § 1115(b). Defendants claim that "IMW breached the oral agreement by failing to transfer and/or assign the GRISHKO marks," which is "irreparable" with no adequate remedy at law, *see* Second Amended Counterclaim at ¶¶ 175-78, but breach of a supposed oral agreement is not among the enumerated exceptions to the exclusivity provisions of 15 U.S.C. § 1115(b). *See* ECF 66 at 18-20. This attempt to end run the incontestability provisions of the Lanham Act is foreclosed by federal law.

### G.    Defendants Fail to State a Claim for Unjust Enrichment Claim (Count Eight)

Defendants' unjust enrichment claim must be dismissed because it is barred by the statute of limitations. Under Pennsylvania law, the statute of limitations for an unjust enrichment claim is four years. *See* 42 Pa. C.S.A. §5525(4) (stating actions upon a contract implied in law must be commenced within four years). Here, Defendants allege that I.M. Wilson was unjustly enriched because the August 5, 1992 document conferred a benefit on I.M. Wilson for which I.M. Wilson paid no consideration. Second Amended Counterclaim ¶¶ 180-183. As a result, "IMW has benefited and continues to financially and reputationally benefit from it use of the Grishko trademark" and "[i]t would be inequitable and unjust if I.M. Wilson was to continue to enjoy such benefits without compensation." *Id*. at ¶¶ 183-84. As Defendants' claim is based upon the execution of the August 5, 1992 document and the lack of consideration for such execution, the statute of limitations for this claim has long passed. Defendants' unjust enrichment claim must be dismissed.

Defendants' unjust enrichment claim must also be dismissed to the extent it is predicated on conduct that occurred while the parties' 1992 Agreement was still in effect.  Unjust enrichment is a quasi-contractual doctrine based in equity, and a court may not make a finding of unjust enrichment "where a written or express contract between the parties exists." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa . Super. Ct. 1999) (citation omitted); *see also Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) ("Under Pennsylvania law, the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract.").  Defendants' allege that the parties' relationship was governed by the 1992 Agreement up and until Defendants' Notice of Termination became effective on March 1, 2017.  Second Amended Counterclaim ¶ 87.

Accordingly, a claim for unjust enrichment cannot lie for any conduct that occurred or accrued while this Agreement was in effect, and Defendants' claim must be dismissed for that further reason as well.

### H.   Defendants Do Not Have Standing To Assert A False Advertising Claim (Count Nine) And Fail To State a Claim

Defendants' false advertising claim must be dismissed because Defendants do not have standing to assert this claim and, alternatively, the allegations in the Second Amended Counterclaim fail to state a claim upon which relief can be granted.

"[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014).  Defendants have not alleged an injury to a commercial interest in reputation or sales that would confer standing.  The sole basis for Defendants' false advertising claim is their allegation that I.M. Wilson "falsely advertised" itself as the "Exclusive Distributor for North America when [I.M. Wilson] knew that another

company was the exclusive distributor for Canada and that [I.M. Wilson] was only the exclusive distributor for the United States." Second Amended Counterclaim ¶ 187. Defendants' allege that these advertisements "caused problems between Grishko and retailers outside the U.S." *Id.* ¶ 191. But the counterclaim is devoid of any allegations that the advertisements resulted in any injury to Grishko's "commercial interest in reputation or sales." Absent such injury, Defendants do not have standing to assert a false advertising claim against I.M. Wilson.

Even if Defendants had standing to pursue a false advertising claim, the allegations in the Second Amended Counterclaim fail to state a claim. To prevail on a false advertising claim, the claimant must establish "that (1) the defendant had made false or misleading statements about its own product or the plaintiff's; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Penrod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011).

Defendants first allege that I.M. Wilson "falsely advertised" itself as the exclusive distributor for North America while it was the exclusive distributor for the United States, and that this advertisement caused "problems" between Grishko and retailers outside of the United States. Second Amended Counterclaims ¶¶ 187-91. The Second Amended Counterclaim is devoid of any factual allegations regarding when the alleged false advertising took place, where the advertisements were placed, the intended audience, whether the allegedly false statement was material to a consumer's decision to purchase from I.M. Wilson rather than the unnamed distributors, or whether the false advertising caused a likelihood of injury in terms of declining sales or loss of good will. Nor could Defendants make such allegations. Defendants' acknowledge

that I.M. Wilson "was the exclusive distributor for the United States." *Id.* ¶ 187. Accordingly, any advertisements distributed to U.S. customers could not have been material to the decision to purchase from I.M. Wilson rather than another distributor, as U.S. consumers could not buy products from Canadian or Mexican distributors while I.M. Wilson possessed the exclusive rights to distribute the product in the United States.

Defendants also allege that I.M. Wilson "continues to falsely advertise IMW as the Exclusive Wholesale Distributor on the domain www.grishko.com even though the 1992 Agreement terminated in March 2017 and Grishko may lawfully sell its ballet products directly to consumer in the U.S." Second Amended Counterclaim ¶ 188. Defendants' false advertising claim must fail because I.M. Wilson owns seven federal trademark registrations for the GRISHKO® Marks, four of which are now incontestable. This forecloses any claim that this statement is false. ECF 66 at 18-20. As termination of the 1992 Agreement did not affect I.M. Wilson's federal trademark registrations or I.M. Wilson's rights to preclude the sale of infringing products, Defendants' false advertising claim cannot be based on this conduct. Accordingly, Defendants fail to allege facts that would "nudge" their false advertising claims from possible to plausible, and this claim must be dismissed.[8]

## I.   Defendants' Claim for Tortious Interference with Business Relations (Count Eleven) Fails to State a Claim upon Which Relief Can be Granted

The Court must dismiss Count Eleven (Tortious Interference with Business Relations) because Defendants have failed to plead the existence of prospective business relations.

---

[8]Though Defendants also include the allegation that that I.M. Wilson's "unauthorized use of the Grishko Mark, the Grishko Model Marks and Grishko Trade Dress" constitutes false advertising because it is likely to "cause confusion, mistake, or deception as to the affiliation, connection, or association of IMW with Grishko," this is not a false advertising claim. *See The Knit With v. Knitting Fever, Inc.*, 625 Fed. Appx. 27, 40 (3d Cir. 2015) (distinguishing between false association claims under § 1125(a)(1) and false advertising claims under § 1125(a)(2)). Defendants' rote recitation of the elements of a false designation of origin claim fails for the same reasons Defendants' Unfair Competition/False Designation of Origin (Count Ten) fails.

To state claim for tortious interference with prospective contractual relations, a party has the burden of pleading and proving: "1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from defendant's conduct." *Global Arena, LLC v. Eterpreting, LLC*, No. 16-3634, 2016 WL 7156396, at *3 (E.D. Pa. Dec. 8, 2016). The tort of intentional interference "contemplates **a relationship**, **prospective** or existing, **of some substance, some particularity**, before an interference can arise as to its value to the plaintiff and the defendant's responsibility for its loss." *RX Home Care Inc., v. Dubin*, 2013 WL 11256832, at *4 (Pa. Super. Ct. July 29, 2013) (quoting *Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1275) (Pa. Super. 2012)) (emphasis in original). Accordingly, to state a claim for tortious interference with prospective business relations, the party alleging tortious interference must plead and prove "a reasonable likelihood that the anticipated business relationship will be consummated." *Id.*

Here, Defendants conclusory allegations fail to adequately plead the existence of prospective contractual relationships with U.S. retailers. With the exception of retailer Discount Dance Supply, Defendants fail to even identify by name those retailers with whom they allegedly had a prospective contractual relationship. *See* Second Amended Counterclaim ¶¶ 204-215 (alleging interference with Defendants' relationships with "third parties" and "U.S. retailers and consumers"). Defendants' allegations of prospective or existing business relationships with unnamed retailers is insufficient to identify with "some substance, some particularity" the business relationships with which I.M. Wilson allegedly interfered. Defendants' failure to allege any facts with respect to the identity of these retailers or Defendants' prior business relations with them is

fatal to Defendants' claim.  Because Defendants fail to plead "a reasonable likelihood that the anticipated business relationship will be consummated" this claim must be dismissed.

Alternatively, the Court must dismiss this claim because I.M. Wilson's alleged conduct is privileged as a matter of law.  Pennsylvania courts have recognized that intentional interference with prospective contractual relations is not improper where the alleged interferer provides truthful information.  *Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 99 (Pa. Super. Ct. 2009).  Likewise, interference is not improper where the alleged interferer "acts at least in part for the purpose of protecting some legitimate interest which conflicts with that of the [complainant]."  *Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971); *See also Schulman v. J.P. Morgan Inv. Mgmt., Inc.*, 35 F.3d 799, 810 (3d Cir. 1994) ("One who, by asserting in good faith a *legally protected interest* of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly.").

The only prospective relationship Defendants identify with any specificity is Defendants prospective relationship with DDS, *see* Second Amended Counterclaim ¶¶ 214-15, and the only alleged interference with this relationship is I.M. Wilson's transmission of a cease and desist letter to DDS, which attaches this Court's order granting I.M. Wilson's motion for a preliminary injunction.  *See* Second Amended Counterclaim ¶¶ 130-133.  As this letter transmitted truthful information, namely a copy of this Court's order, which the recipient was well capable of reading, any alleged interference by I.M. Wilson is justified or privileged and cannot form the basis of a tortious interference claim.  *See Walnut Street Associates*, 982 A.2d at 102 (holding truthful statements were not improper as a matter of law).  Moreover, because I.M. Wilson acted to protect

its legitimate interest in the GRISHKO® trademark, transmission of the cease and desist letter cannot form the basis of Defendants' tortious interference claim.

**J.      Defendants' Claim for Defamation (Count Twelve) Must be Dismissed**

Defendants' Defamation or Defamation Per Se claim (Count Twelve) must be dismissed because the communications relied upon do not qualify as defamation per se, and Defendants have failed to plead the necessary elements of a defamation claim in any event.

As a threshold matter, the statements alleged by Defendants to be defamatory do not constitute defamation *per se*, and Defendants' defamation per se claim must be dismissed for failure to plead special damages.  Defamation per se "can be either words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct." *Mallory v. S&S Publishers*, 260 F. Supp. 3d 453, 465 (E.D. Pa. 2017).  Determining whether the alleged defamatory statement qualifies as defamation per is a question of law for the Court. *Synergy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999).  Words imputing business misconduct can be defamation per se if they ascribe to another conduct that "adversely affects his fitness for the proper conduct of his lawful business." *Id*.  Such a statement must go beyond mere general disparagement, and must be particularly harmful to an individual engaged in the plaintiff's business. *Id*.  An expression of negative opinion is not defamatory. *Id*.  If Defendants have adequately alleged defamation per se, a showing of special harm resulting from the defamation is not required. *Id*. (noting claimant must either establish specific monetary or out-of-pocket loss as a result of defamation or defamation per se).

Here, the alleged statements are not "defamation per se" because they are not statements that ascribe conduct to Defendants that would so "adversely affect" Defendants' fitness for the proper conduct of their business.  Defendants allege that I.M. Wilson informed retailers that Defendants were "undercutting" and "undermining" U.S. retailers, defying a Court order, and

selling products that were no longer supplying high quality products. Second Amended Counterclaim ¶ 218. Such statements expressing a negative opinion regarding the quality and pricing of Defendants' products are not defamation per se because they are not the type of statements that go beyond mere disparagement, and are not particularly harmful to an individual engaged in Defendants' business. *See Synergy,* 51 F. Supp. 2d at 580. As these statements do not constitute defamation per se, and Defendants do not plead any facts establishing special harm resulting from the alleged defamation, Defendants' claim must be dismissed.

Defendants' allegations likewise fail to state a claim for defamation. Under Pennsylvania law, a claimant bears the burden of proving in an action for defamation: "(1) the defamatory nature of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory nature; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; [and] (7) abuse of a conditionally privileged occasioned." 42 Pa.C.S. § 8343(a). At the motion to dismiss stage, the Court must make a threshold determination of whether the alleged defamatory statement is capable of defamatory meaning. *Hunt v. University of Pittsburg Medical Ctr., Pinnacle*, No. 1:18-cv-01757, 2019 WL 3776545, at *7 (M.D. Pa. Aug. 12, 2019); *Purcell v. Ewing*, 560 F. Supp. 2d 337, 341 (M.D. Pa. 2008). "A communication is considered defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Purcell*, 560 F. Supp. 2d at 341 (quoting *Goralski v. Pizzimenti*, 115 Pa. Cmwlth. 210, 540 A.2d 595, 597–98 (1988)). Thus, to prevail on a defamation claim, "the statement must do more than merely embarrass or annoy [them]; it must provoke the kind of harm which has grievously fractured his standing in the community of respectable society." *Abdellatif v. Alza Wrae Industrial Company*, No. 18-2297,

2019 WL 1284689, at *8 (E.D. Pa. Mar. 20, 2019) (internal quotations and citation marks omitted). The determinative factor in this analysis is the "way in which the communication would have been interpreted by the reasonable, average person in its intended audience." *Karl v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 78 F.Supp.2d 393, 397 (E.D.Pa. 1999). Statements of opinion, without more, are not actionable. *Purcell*, 560 F. Supp. at 342. Likewise, substantially truthful statements are not actionable. *Tucker v. Merck & Co., Inc.*, 102 Fed. Appx. 247, 253 (3d Cir. 2004).

Defendants' defamation claim must fail because each of the allegedly defamatory statements were either truthful, privileged, or statements of opinion. Defendants identify three allegedly defamatory communications: (1) a July 1, 2019 letter sent by IMW to U.S. dance retailers regarding the quality of Defendants' pointe shoes (*see* ECF 76-1 at Exhibit B); (2) an August 2, 2019 cease and desist letter sent to Discount Dance (*see* ECF 76-1 at Exhibit D); and (3) an August 9, 2019 email to retailers regarding the Court's order (*see* ECF 76-1 at Exhibit C).[9] A review of these communications demonstrates that the statements contained in these communications are not defamatory as a matter of law. The July 1 letter expressed I.M. Wilson's opinions regarding the quality of Defendants' products and are therefore not actionable. *Purcell*, 560 F. Supp. at 342. The August 2 and August 9 letters contain substantially true statements regarding this Court's preliminary injunction opinion and are therefore not actionable. *Tucker*, 102 Fed. Appx. at 253. Because the statements are not defamatory as a matter of law, the Court must dismiss Defendants' defamation claim. *Hunt*, 2019 WL 3776545, at *7; *Purcell*, 560 F. Supp. 2d at 341 (M.D. Pa. 2008).

---

[9] These are the same documents submitted by Defendants in support of their Motion For Leave to Supplement Preliminary Injunction Record and To Alter, Amend, or Seek Relief From the Court's July 25, 2019 Order (Dkt. 67). *See* ECF 76, 76-1. The Court may properly consider these documents because they form the basis of Defendants' defamation claim. *See Kimmel*, 847 F. Supp. 2d at 756.

**K.**     **Defendants' Claim for Declaratory Judgment Should be Stricken Because it is Redundant**

Where a counterclaim "merely serves to restate the controversy set forth in the complaint it may be stricken as redundant." *John Evans Sons, Inc. v. Majik-Ironers, Inc.*, 95 F.R.D. 186, 190 (E.D. Pa. 1982). That is so here: Defendants' request for declaratory relief (Count One) seeks the mirror image of relief requested by I.M. Wilson, or is otherwise duplicative of the requests for relief of the other counts discussed above, and should be stricken or dismissed accordingly.

A counterclaim is considered redundant if it raises no issues not raised in the complaint and there is no relief that may be granted on the counterclaim which the counterclaimant would not be awarded if it were successful in its defense of the action. *Id.* (dismissing counterclaim for declaratory relief because the counterclaim was redundant); *see Chase Bank USA, N.A. v. Hess*, No. 8-121-LPS-MPT, 2012 WL 1378534, at *4-5 (D. Del Apr. 17, 2012) (dismissing counterclaim for declaratory relief where claim was redundant of complaint and would be rendered moot upon disposition of complaint); *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562, 566 (D. Del. 2009) (granting in part and denying in part motion to dismiss declaratory judgment counterclaim as redundant).

Here, Defendants' counterclaim for declaratory relief is redundant of I.M. Wilson's claims, Defendants' affirmative defenses, and Defendants' remaining twelve counterclaims. Defendants' declaratory relief count requests that the Court issue a declaratory judgment that (1) Defendants own intellectual property rights in I.M. Wilson's federally registered and incontestable GRISHKO® trademarks as well as the "Model Marks," "Sole Mark," and "Grishko Trade Dress" identified in Defendants' counterclaims as unregistered trademarks; (2) I.M. Wilson's use of these marks for ballet dancewear products or related goods or service would infringe upon Grishko's

rights;[10] (3) Defendants are the beneficial owners of I.M. Wilson's trademark registrations; (4) I.M. Wilson's Registrations are subject to cancellation; and (5) I.M. Wilson should be enjoined from using the Grishko trademarks.  Second Amended Counterclaim ¶ 135.

Each of the grounds upon which Defendants seek declaratory relief are redundant of I.M. Wilsons' complaint as well as Defendants' affirmative defenses and counterclaims.  Defendants request no relief in their declaratory judgment counterclaim that could not be granted in the event Defendants are successful in their defense or on their remaining twelve counterclaims.  Further, even to the extent that Defendants' declaratory relief request can be construed as extending beyond I.M. Wilson's complaints, the substantive counts on which they are based – e.g. infringement of the "Model Marks" or "Grishko Trade Dress" – are themselves subject to dismissal, such that no purpose would be served by extending a declaration on an already-dismissed claim.

Accordingly, the Court should strike Count One pursuant to Federal Rule of Civil Procedure 12(f), or alternatively dismiss it pursuant to Federal Rule 12(b)(6).

## V.     Conclusion

For the foregoing reasons, Plaintiff I.M. Wilson respectfully requests the Court dismiss or otherwise strike all counts in Defendants' Second Amended Counterclaim, with prejudice.

---

[10] Grishko's request that the court declare future conduct unlawful "lacks the immediacy and reality necessary to require a judicial declaration of rights as between the parties."  *Egli v. Strimel*, 251 F. Supp. 3d 827, 843 (E.D. Pa. 2017)

Dated:  November 29, 2019                    Respectfully submitted,


                                             */s/  Daniel E. Brewer*
                                             Daniel E. Brewer
                                             DRINKER BIDDLE & REATH LLP
                                             One Logan Square, Ste. 2000
                                             Philadelphia, PA 19103-6996
                                             (215) 988-3370 office
                                             (215) 988-2757 fax
                                             Daniel.Brewer@dbr.com

                                             Brian A. Coleman (admitted *pro hac vice*)
                                             Katlyn M. Moseley (admitted *pro hac vice*)
                                             DRINKER BIDDLE & REATH LLP
                                             1500 K Street, NW, Ste. 1100
                                             Washington, D.C. 20005-1209
                                             Telephone:  (202) 842-8800
                                             Fax:  (202)842-8465
                                             Brian.Coleman@dbr.com
                                             Katlyn.Moseley@dbr.com

                                             *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I caused a true and correct copy of

Plaintiff I.M. Wilson's Motion to Strike and Dismiss Defendants' Second Amended

Counterclaim to be served upon the following via the Court's electronic filing system:

Robert A. McKinley
David S. Hollander
LAULETTA BIRNBAUM, LLC
591 Mantua Blvd., Suite 200
Sewell, NJ 08080
(856) 232-1600 (Office)
(856) 232-1601 (Fax)
rmckinley@lauletta.com
dhollander@lauletta.com

BRIAN PATRICK KINDER
THE KINDER LAW GROUP
19200 VON KARMAN 4TH FL
IRVINE, CA 92612
949-216-3070
bkinder@tklglaw.com

*Attorneys for Defendant*

John A. Guernsey
Andrew K. Garden
CONRAD O'BRIEN PC
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Phone: (215) 864-9600
Fax: (215) 864-9620

*Attorneys for Counterclaim Defendants Irene Wilson, Leonard Patrick Gage, Justin Wilson, and Christine Wilson*

Dated: November 29, 2019

*/s/ Katlyn M. Moseley*
**Katlyn M. Moseley**